**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**KELLEY TECHNICAL COATINGS, INC.**
**(96–6282); Arthur Sumner (96–6283),**
**Defendants–Appellants.**

**Nos. 96–6282, 96–6283.**

United States Court of Appeals,
Sixth Circuit.

Argued March 17, 1998.

Decided Sept. 16, 1998.

Rehearing Denied Oct. 19, 1998.

Mark R. Feather (argued and briefed), Larisa E. Wicklander (briefed), Brown, Todd & Heyburn, Louisville, KY, for Kelly Technical Coatings, Inc.

Scott C. Cox (briefed), Louisville, KY, for Arthur Sumner.

Ethan G. Shenkman (argued and briefed), John T. Stahr, J. Carol Williams, Jonathan F. Klein, U.S. Department of Justice, Land & Natural Resources Division, Washington, D.C., Richard A. Dennis (briefed), Terry M. Cushing, Asst.U.S.Attys., Office of U.S. Attorney, Louisville, KY, for Plaintiff–Appellee.

Before: MERRITT and CLAY, Circuit Judges; BELL, District Judge.*

## OPINION

BELL, District Judge.

Defendants Kelley Technical Coatings, Inc. ("Kelley") and Arthur Sumner were convicted of knowingly storing and disposing of hazardous waste without a permit in violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6928(d)(2)(A).[1] The District Court sentenced Kelley to pay a fine of $225,000, and sentenced Sumner to 21 months' imprisonment and a fine of $5000.

Kelley and Sumner appeal their convictions, and Sumner also appeals his sentence.

## I.

Kelley is an industrial paint manufacturing company which operates two plants in Louisville, Kentucky. At all relevant times Arthur Sumner was the Vice President in charge of manufacturing operations for Kelley. In this role Sumner oversaw the manufacturing process at both plants, including the storage and disposal of hazardous wastes. He was also responsible for environmental regulatory compliance, and submitted the necessary paperwork to the state environmental authorities to register Kelley as a generator of hazardous waste.

Kelley generated substantial quantities of hazardous wastes in its manufacturing process, including spent solvents, such as toluene, ethyl benzene, xylene, and methyl ethyl ketone; excess and unusable paint, paint resins, and other paint ingredients which contained, among other things, toxic heavy metals such as chromium, lead, cadmium, and nickel; and paint sludge. Kelley accumulated hundreds of drums of these waste materials and stored them in drums behind Plant Two. During the period covered by the indictment Kelley never applied for a permit to store or dispose of its hazardous wastes on-site.

At the time of the July 1992 inspection by the Kentucky Department of Environmental Protection there were between 600 and 1000 drums behind Plant Two. The drums had been stored on-site for more than 90 days, and in some cases for many years. Some of the drums had rusted and were leaking on the ground.

Between 1986 and 1989, Sumner had arranged for a licensed hazardous waste disposal company to remove and dispose of some of the drums containing hazardous

---

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1. The indictment contained three counts. Defendants were acquitted on Count I, alleging conspiracy to store and dispose of hazardous waste without a permit. They were convicted on Count II, alleging storage without a permit from January 1, 1986 to September 29, 1992, and Count III, alleging disposal without a permit from January 1, 1990 to September 29, 1992.

wastes. From late 1989 to July 1992, however, no drums of hazardous waste were shipped off-site. Instead, in an effort to save money, Kelley contracted with a hazardous waste disposal company to come on site and drain the liquids from the drums. After the bulk of the hazardous wastes were drained off, employees were directed to pour off any rainwater that had collected into the drums onto the ground and to consolidate the remaining residue into one drum. The consolidation process resulted in the spilling of hazardous substances onto the ground. Although Sumner claimed that some of the material was kept on site because it might be reused, he acknowledged that Kelley generated waste at a far greater rate than it was used.

## II.

Kelley and Sumner challenge their convictions on the basis that the jury was improperly instructed on the *mens rea* required for conviction under the RCRA statute.

■ "This court reviews the jury charge as a whole to determine whether it fairly and adequately submits the issues and the law to the jury." *United States v. Newcomb,* 6 F.3d 1129, 1132 (6th Cir.1993)(citing *United States v. Williams,* 952 F.2d 1504, 1512 (6th Cir. 1991)).

Defendants were convicted of knowingly storing and disposing of hazardous wastes in violation of 42 U.S.C.A. § 6928(d)(2)(A). The statute provides for the imposition of criminal penalties against any person who "(2) knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter—(A) without a permit under this subchapter...." 42 U.S.C.A. § 6928(d)(2)(A).

With respect to the storage count, the trial court instructed the jury as follows:

Each individual defendant can be found guilty as to Count Two of the indictment only if all of the following facts are proved beyond a reasonable doubt with respect to that defendant.

First, that on or about January 1, 1986 through September 29, 1992, the defendant knowingly stored material on the premises

of Kelley Plant Two for a period exceeding 90 days.

Second, that the material was hazardous waste.

Third, that the defendant did not have a permit to store hazardous waste.

Fourth, that the defendant knew that the material was waste and that it had the potential to be harmful to others or to the environment.

The trial court gave an identical instruction as to the disposal charge in Count III, except for the insertion of "disposed of" for "stored," and the omission of the 90–day requirement in the first element. The trial court further instructed that "the United States is not required to prove that the defendant knew that the material was listed or identified by law as hazardous waste or that he was required to obtain a permit before storing or disposing of material."

## A.

■ Defendants contend that the district court erred because it failed to instruct the jury that they could not convict unless they found the Defendants "knowingly" violated the law. Defendants contend that the jury should have been instructed that they could not convict unless they determined that Defendants knew that the material in question was regulated hazardous waste and knew that a permit was required.

Defendants' "knowledge of illegality" argument has been rejected by this court. *United States v. Dean,* 969 F.2d 187 (6th Cir. 1992), *cert. denied,* 507 U.S. 1033, 113 S.Ct. 1852, 123 L.Ed.2d 475 (1993). This argument has also been rejected by every other court of appeals that has considered the issue. *See United States v. Self,* 2 F.3d 1071, 1089–91 (10th Cir.1993); *United States v. Goldsmith,* 978 F.2d 643, 645 (11th Cir.1992); *United States v. Baytank (Houston), Inc.,* 934 F.2d 599, 613 (5th Cir.1991); *United States v. Dee,* 912 F.2d 741, 745 (4th Cir. 1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991); *United States v. Hoflin,* 880 F.2d 1033, 1037–39 (9th Cir. 1989), *cert. denied,* 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990); *United States*

*v. Johnson & Towers, Inc.*, 741 F.2d 662 (3rd Cir.1984), *cert. denied, sub nom Angel v. United States*, 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985).[2]

In *Dean*, this court addressed the specific issue of whether the government should be required to prove the defendant knew a permit was required in order to convict a defendant for violating 42 U.S.C. § 6928(d). Based upon statutory construction, this court concluded that Section 6928(d)(2)(A) does not require knowledge of the permit requirement. 969 F.2d at 191–92. Section 6928(d)(2)(A) requires knowing treatment, knowing storage, or knowing disposal of hazardous waste. It also requires proof that the treatment, or storage, or disposal was done without a permit. "It does not require that the person charged have known that a permit was required, and that knowledge is not relevant." *Id.* at 191.

Notwithstanding the *Dean* decision, Defendants contend that *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), requires knowledge of illegality. In *Liparota* the Supreme Court held that "in a prosecution for violation of § 2024(b)(1), the Government must prove that the defendant knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations." 471 U.S. at 433, 105 S.Ct. 2084.

Defendants' argument based upon *Liparota* was considered and rejected in *Dean*. This court distinguished the food stamp statute from those statutes where Congress has rendered criminal a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety. *Dean*, 969 F.2d at 192. In contrast to food stamp regulations, "persons involved in hazardous waste handling have every reason to be aware that their activities are regulated by law." *Dean*, 969 F.2d at 192 (citing *United States v. International Minerals & Chem-*

*ical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971)).

■ *Dean* is not only persuasive, but also controlling. "In the Sixth Circuit, as well as all other federal circuits, one panel cannot overrule a prior panel's published decision." *United States v. Washington*, 127 F.3d 510, 517 (6th Cir.1997)(citing Sixth Circuit Internal Operating Procedure § 22.4.1 (June 12, 1991)), *cert. denied,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed. 2718 (1998). "The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Id.* (quoting *Salmi v. Secretary of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985)).

Defendants direct this court's attention to two Supreme Court decisions decided after *Dean, United States v. X–Citement Video*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), and *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), which, they contend, require the Court to abandon the reasoning in *Dean.*

Neither *X–Citement Video* nor *Staples*, indicate that *Dean* should be overruled or that there was any error in the jury instructions given in this case. Neither of the Supreme Court cases cited by Defendants construed the *mens rea* requirements of RCRA or any other environmental statute. *Staples* involved the *mens rea* requirement under a federal firearm registration statute, 26 U.S.C. § 5861(d). The Supreme Court held the statute required proof that the defendant knew of the characteristics of his weapon that made it a "firearm" under the Act. *Staples*, 511 U.S. at 609, 114 S.Ct. 1793.

*Staples* does not require reconsideration or modification of *Dean*. The Supreme Court did not deviate from its prior holding in *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), that a defendant need not know that his weapon is unregistered. "[O]ur determination that a defen-

---

**2.** Although the Third Circuit in *United States v. Johnson & Towers, Inc.*, 741 F.2d 662 (3rd Cir. 1984), *cert. denied, sub nom Angel v. United States*, 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985), held that "knowingly" applies to all

elements of the offense in section 6298(d)(2)(A), the court held that the government need prove only "knowledge of the actions taken and not of the statute forbidding them." *Id.* at 669.

dant need not know that his weapon is unregistered suggests no conclusion concerning whether § 5861(d) requires the defendant to know of the features that make his weapon a statutory 'firearm'; different elements of the same offense can require different mental states." 511 U.S. at 609, 114 S.Ct. 1793.

*X–Citement Video* involved the *mens rea* requirements under a child pornography statute, 18 U.S.C. § 2252(a). The Supreme Court required proof that the defendant knew his sexually explicit mailing pictured minors because "the age of the performers is the crucial element separating legal innocence from wrongful conduct." 513 U.S. at 72, 115 S.Ct. 464.

In *United States v. Ahmad,* 101 F.3d 386 (5th Cir.1996), the Fifth Circuit applied *Staples* and *X–Citement Video* to a prosecution under Clean Water Act, 33 U.S.C. §§ 1311(a) and 1319(c)(2)(A), and struck down a jury instruction that failed to require that the defendant know that the substance he discharged was a pollutant. 101 F.3d at 391. The defendant's primary defense in *Ahmad* was that he thought he was discharging water, not gasoline. *Id.* at 390.

*Staples, X–Citement Video,* and *Ahmad* focused on the requirement that the government prove the defendant's knowledge of particular facts—i.e., that the firearm was capable of firing automatically, that the subject of the pornographic depiction was a minor child, or that the substance discharged was a pollutant. None of these cases held that knowledge of the law or regulatory requirements was an element of the offense.

In *United States v. Hopkins,* 53 F.3d 533, 540 (2nd Cir.1995), *cert. denied,* 516 U.S. 1072, 116 S.Ct. 773, 133 L.Ed.2d 725 (1996), the Second Circuit rejected the defendant's reliance on *Staples* for the proposition that for a conviction under the Clean Water Act the government was required to prove that the defendant knew his conduct violated the law or a regulatory permit. The Second Circuit noted that although the Court in *Staples* held that the defendant could not properly be convicted unless the government proved that he knew the nature of his acts, the Court in no way suggested that the government had the burden of proving that the defendant also knew that his acts violated the law. 53 F.3d at 540.

The instructions given in this case were consistent with *Staples* and *X–Citement Video.* They required the government to prove the defendant's knowledge of the storage or disposal, the defendant's knowledge that the material was waste, and the defendant's knowledge that it had the potential to be harmful to others or to the environment. The instructions adequately required that the defendant have knowledge of the facts that made the conduct a crime.

## B.

Defendants assert in the alternative that *Dean* is no longer good law because its analysis of § 6928(d)(2) was premised on the assumption that RCRA is a "public welfare offense," and after *Staples,* the public welfare offense doctrine may not be applied to a statute which imposes felony level penalties.

■ Public welfare offenses are a category of crimes which "depend on no mental element but consist only of forbidden acts or omissions." *Morissette v. United States,* 342 U.S. 246, 252–53, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The public welfare offense doctrine stems from the presumption that where "dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *United States v. International Minerals & Chem. Corp.,* 402 U.S. 558, 565, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). Public welfare offenses dispense with "the conventional requirement for criminal conduct—awareness of some wrongdoing." *Staples,* 511 U.S. at 619, 114 S.Ct. 1793 (quoting *United States v. Dotterweich,* 320 U.S. 277, 280–81, 64 S.Ct. 134, 88 L.Ed. 48 (1943)).

■ Defendants' arguments that *Dean* is no longer valid because it relied on the public welfare offense doctrine is not persuasive. First, contrary to Defendants' assertion, the *Dean* decision did not depend on the public welfare doctrine. The decision was

based primarily on the plain language of the RCRA statute. "[W]e see no basis on the face of the statute for concluding that knowledge of the permit requirement is an element of the crime." *Dean,* 969 F.2d at 190. "To us the statute is clear, makes sense and does not contain the ambiguities or inconsistencies found by others." *Id.* at 191. "The inquiry ends with a cogent means of reading the plain language of the statute." *Id.*[3] Only after determining that knowledge of a permit requirement was not required by the plain language of the statute did the court make a final note that statutes such as RCRA, which are designed to protect the public health and safety, have consistently been distinguished in Supreme Court precedent as more likely candidates for diminished *mens rea* requirements. *Id.* at 191–92 (citing *Liparota v. United States,* 471 U.S. 419, 433, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)).

Second, even to the extent *Dean* was premised on the "public welfare offense" doctrine, neither *Staples* nor *X–Citement Video* undermined the application of the public welfare offense doctrine to felony prosecutions under RCRA. Both *Staples* and *X–Citement Video* made a point of contrasting the statutes before them from those statutes which were typically classified as public welfare offenses. As noted by the Ninth Circuit in *United States v. Weitzenhoff,* 35 F.3d 1275, 1280–81 (9th Cir.1993), *cert. denied sub nom. Mariani v. United States,* 513 U.S. 1128, 115 S.Ct. 939, 130 L.Ed.2d 884 (1995), while the *Staples* Court declined to characterize the mere innocent ownership of guns as a public welfare offense, it confirmed the continued vitality of those statutes which regulate public welfare offenses—i.e., those offenses which "regulate potentially harmful or injurious items" and place a defendant on notice

that he is dealing with a device or a substance "that places him in 'responsible relation to a public danger.'" *Weitzenhoff,* 35 F.3d at 1280 (quoting *Staples,* 511 U.S. at 611, 114 S.Ct. 1793). *See also United States v. Hopkins,* 53 F.3d 533, 538–39 (2nd Cir.1995)(recognizing that the "presumption of awareness of regulation" doctrine applies to the Clean Water Act and RCRA).

*Weitzenhoff* involved a prosecution under the Clean Water Act ("CWA"). The court held that *Staples* did not affect its determination that the CWA's criminal provisions are classic public welfare offenses and that "knowingly" under the CWA does not require knowledge of the legal violation. 35 F.3d at 1280.[4]

In *Staples* the Supreme Court observed that the cases that first defined the concept of the public welfare offense generally involved statutes that provided for only light penalties such as fines or short jail sentences rather than imprisonment. 511 U.S. at 616, 114 S.Ct. 1793. The Court noted that "[c]lose adherence to the early cases described might suggest that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense." *Id.* at 618, 114 S.Ct. 1793. However, a determination on the issue was not necessary to the Court's decision, and the Court refrained from holding that public welfare offenses may not be punished as felonies. *Id. See also Weitzenhoff,* 35 F.3d at 1281.

We conclude that there is no decision of the United States Supreme Court that requires modification of *Dean,* and that the district court's instructions regarding knowledge were adequate under *Dean.*

---

**3.** Defendants contend that RCRA is "gravely ambiguous" and requires application of the rule of lenity and an interpretation of the statute that requires proof of knowledge of illegality. Under the rule of lenity "an ambiguous criminal statute is to be construed in favor of the accused." *Staples,* 511 U.S. at 619 n. 17, 114 S.Ct. 1793. This maxim of construction, however, is not lightly applied. It is inapplicable unless there is a "grievous ambiguity or uncertainty" in the statute. *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). There is no such grievous ambiguity in RCRA, as

demonstrated by the analysis in *Dean.* Accordingly, we reject Defendants' argument for application of the rule of lenity.

**4.** Although the Fifth Circuit has opined that violations of the CWA do not fall within the public welfare offense doctrine, *Ahmad,* 101 F.3d at 391, we agree with the Second and Ninth Circuits in that violations of the CWA fit squarely within the public welfare offense doctrine. *See Hopkins,* 53 F.3d at 537–41, and *Weitzenhoff,* 35 F.3d at 1284–86.

### C.

■ Defendants argued at trial that they handled "materials" which they believed to be raw materials, finished products, off-specification materials awaiting reformulation, and other such materials, rather than "hazardous wastes." According to Defendants, even if *Dean* and the public welfare offense doctrine are valid, the court should analyze whether the public welfare offense doctrine applies in this case from the standpoint of whether the handling of the "materials" by Defendants would put them on notice they were committing a crime.

Defendants add unnecessary confusion to an otherwise straightforward issue. Defendants were not ignorant about the hazardous nature of the materials they were handling. There was ample evidence presented at trial that Defendant Sumner knew the contents of the drums and knew how to properly dispose of it. He was the individual who arranged for hazardous waste disposal. The only issue presented by the defense was when those materials should have been classified as waste, not whether or not they knew they were "hazardous waste" once they were classified as waste. The jury was properly instructed that the Defendants had to know the materials were waste.

### D.

■ Defendants contend that the district court erred by instructing the jury that to be convicted under § 6928(d)(2) a defendant must have knowledge that the waste materials had the "potential" rather than the "substantial potential" to be harmful to others or to the environment. Defendants assert that the court impermissibly altered the statutory definition of hazardous waste and imposed a lesser standard of guilt on the defendants.[5]

■ The Fifth and Sixth Amendments to the United States Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin,* 515 U.S. 506, 509–10, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)(citing *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182 (1993)).

In *Dean* this court applied the statutory definition of "hazardous waste" found at 42 U.S.C. § 6903(5) to a criminal prosecution under § 6928(d)(2). "Hazardous waste" is defined in section 6903(5) as "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may ... (B) pose a substantial present or potential hazard to human health or the environment...."

The instruction given by the district court in this case omitted the word "substantial." There is no question that the better course is to require knowledge of a "substantial" potential. In *United States v. Laughlin,* 10 F.3d 961, 967 (2nd Cir.1993), *cert. denied, sub nom. Goldman v. United States,* 511 U.S. 1071, 114 S.Ct. 1649, 128 L.Ed.2d 368 (1994), the district court omitted the word "substantial" in its instructions. The Second Circuit observed that

> the better course is to include the word "substantial" in jury instructions relating to hazardous waste under RCRA. Section 6903(5) clearly provides that before waste will be deemed "hazardous" within the meaning of RCRA, it must present not simply a potential hazard, but a *substantial* potential hazard. The jury should have the benefit of the statutory definition.

*Id.* at 967. Nevertheless, the court held that the omission of the word "substantial" was not plain error. *Id.*

A number of courts have approved instructions that merely required that defendant have knowledge that the matter had a potential to be harmful. *See e.g. United States v. Goldsmith,* 978 F.2d 643, 646 (11th Cir.1992); *United States v. Hoflin,* 880 F.2d 1033, 1039 (9th Cir.1989). The Fifth Circuit has held

---

5. We do not agree with the government's assertion that Defendants waived this argument. Although Defendants initially requested the court to instruct "that these substances were potentially harmful to others or potentially harmful to the environment," in a supplemental trial brief, Defendants argued that they were entitled to an instruction that included the RCRA definition that hazardous waste was a substance that posed a "substantial" present or potential hazard.

that the omission of the word "substantial" was harmless error. *See, e.g. United States v. Baytank,* 934 F.2d 599 (5th Cir.1991). *See also United States v. Self,* 2 F.3d 1071, 1091 (10th Cir.1993) (instruction allowing jury to convict merely by finding that defendant knew material was not a benign or innocuous material such as water was not plain error); *United States v. Dee,* 912 F.2d 741, 745–46 (4th Cir.1990)(failure to instruct that defendants must know chemicals were hazardous was harmless error where record reflected overwhelming evidence that defendants were aware they were dealing with hazardous chemicals).

In this case the failure to instruct as to "substantial" potential was harmless error since there was overwhelming evidence that Defendants knew that the contents of the drums were hazardous materials. Defendants were knowledgeable about RCRA requirements. They signed annual hazardous waste registration forms and arranged for the proper disposal of the contents of the drums by qualified hazardous waste haulers. That Defendants knew that the residue in the drums was hazardous waste as well is beyond doubt.

### III.

Defendant Sumner argues that the Court erred by failing to give his proposed defense theory instruction.

■ A refusal to give requested instructions is reversible error only if:

(1) the instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case. *United States v. Williams,* 952 F.2d 1504, 1512 (6th Cir.1991).

*United States v. Newcomb,* 6 F.3d 1129, 1132 (6th Cir.1993).

■ "[W]hen a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions." *United States v. Duncan,* 850 F.2d 1104, 1117 (6th Cir.1988)(quoting *United States v. Garner,* 529 F.2d 962, 971 (6th Cir.), *cert. denied sub nom. Brown v. United States,* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976)). However, a district court is not required to give a defense theory instruction that merely recites evidence rather than defendant's legal theories. *United States v. Dandy,* 998 F.2d 1344, 1358–59 (6th Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994). A defendant is not entitled to a judicial narrative of his version of the facts. *United States v. Barham,* 595 F.2d 231, 244 (5th Cir.1979). A district court may properly refuse to give a requested theory of defense when the requested jury charge is partisan and aspires to place the defendants' desired factual findings into the mouth of the court. *United States v. Paradies,* 98 F.3d 1266, 1287 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2483, 138 L.Ed.2d 992 (1997).

■ The district court correctly observed that the proposed defense theory instructions offered by Defendant Sumner and Kelley were "virtually a closing argument for the defense in which you were laden with facts most favorable to the defendants." In response to the court's inquiry as to which specific defense theories had not been touched upon in the court's proposed instructions, defendants could only articulate one—knowledge.

As noted above, the issue of defendant's requisite "knowledge" was adequately covered by the other instructions. The issue of knowledge that the material was waste was covered by the instruction as to the fourth element: "that the defendant knew that the material was waste and that it had the potential to be harmful to others or to the environment." Failure to give the defendants' proposed defense theory instructions did not impair the defendants' ability to present their theories of the case.

Because Defendants' proposed defense theory instructions were predominantly recitations of defendants' version of contested facts, and because they did not state a defense theory that is not otherwise clear from the other instructions, the district court did not err in refusing to give these instructions.

## IV.

Defendant Sumner contends there was insufficient evidence to support his conviction under Count Three for knowingly disposing of hazardous waste without a permit. Sumner's sufficiency of the evidence argument is reviewed under the following standard:

Evidence is sufficient to uphold a jury conviction if after viewing the evidence in the light most favorable to the government and drawing all inferences in the government's favor, a reasonable juror could find that each element of the offense has been established beyond a reasonable doubt. *United States v. Taylor,* 13 F.3d 986, 991 (6th Cir.1994).

*United States v. Kraig,* 99 F.3d 1361, 1368 (6th Cir.1996).

The focus of Sumner's argument is that there is insufficient evidence that he knowingly disposed of material on the premises of Kelley Plant Two. He points to the fact that there was no testimony that Sumner was ever present when there was any drum consolidation activity, and there was no testimony that he knew any spillage or leaking was occurring.

Even assuming there was a lack of direct evidence, there was more than sufficient circumstantial evidence from which a reasonable juror could find that Defendant Sumner knew of the disposal of waste at Kelley Plant Two.

The evidence of disposal included evidence of numerous leaking drums; wet and spongy soil in the vicinity of the drums; visible staining on the ground; drums allowed to sit without covers or plugs; drums tipped over to pour out "rain water" onto the ground; and frequent spillage during the drum consolidation process. All of this was readily apparent to anyone on the premises.

There was also ample evidence that Sumner knew about and authorized, encouraged, or aided and abetted some or all of these practices. Sumner was responsible for transferring the drums from Plant One to Plant Two and for deciding when to dispose of drums. Sumner testified that he would stop in at Plant Two several mornings a week and talk with Kevin French, the production manager about Plant Two. French did not have authority to designate anything as waste or to order the disposal of any material at Plant Two. Sumner had a general knowledge of the age of drums, how they were marked, how they were arranged and what they contained. Sumner admitted knowledge and approval of the consolidation of material left in the drums after the pumping out process, and of the practice of tipping fluids from the drums onto the ground.

Sumner's knowledge of disposal activities could reasonably be concluded from his responsibility for waste handling, his frequent visits to Plant Two, and his familiarity with the location, age and contents of the drums.

Viewing the evidence in the light most favorable to the government, there is more than sufficient evidence from which a jury could reasonably find that Sumner knowingly approved, authorized, and/or aided and abetted the actions which constituted disposal of hazardous wastes on the premises.

## V.

### A.

Defendant Sumner challenges, for the first time on appeal, the validity of U.S.S.G. § 2Q1.2. Sumner contends that this guideline, both on its face and as applied, is inconsistent with the enabling legislation for the Sentencing Guidelines. Defendant contends that in promulgating § 2Q1.2 the Sentencing Commission ignored the mandate contained in 28 U.S.C. § 994(m) that, as a starting point in its development of the initial sets of guidelines for particular categories of cases, the Commission ascertain the average sentences imposed in such categories of cases prior to the creation of the guideline.

"As a general rule, we will not consider issues not presented to and considered by the district court." *United States v. Harris,* 9 F.3d 493, 499 (6th Cir.1993)(citing *United States v. Pickett,* 941 F.2d 411, 415 (6th Cir.1991)). Although we retain discretion to consider issues not previously raised to avoid "a plain miscarriage of justice," *id.,*

this case does not call for the exercise of that discretion.

We are doubtful that Defendant's challenge to the validity of § 2Q1.2 has any merit. We are certain that it does not present a "plain miscarriage of justice." Defendant has not identified a single court that has questioned the validity of this guideline as applied to a conviction under any one of a number of environmental statutes.

 There is no requirement that the Sentencing Commission keep records of the "average sentences." *See Washington Legal Foundation v. United States Sentencing Comm'n*, 89 F.3d 897, 906 (D.C.Cir.1996). While the Sentencing Commission is required, as a starting point in its development of the guidelines to ascertain the average sentences imposed in various categories of cases, Congress specifically provided that the Commission "shall·not be bound by such average sentences." 28 U.S.C. § 994(m).

Furthermore, contrary to Defendant Sumner's assertions, both Congress and the Sentencing Commission have determined that the environmental offenses covered by § 2Q1.2 are serious offenses. *See United States v. Ellen*, 961 F.2d 462, 468 (4th Cir. 1992) *cert. denied*, 506 U.S. 875, 113 S.Ct. 217, 121 L.Ed.2d 155 (1992)("Through the … environmental laws, congress had determined that harm to the environment—even absent imminent threats to public health, welfare, or safety—is a public policy concern of the greatest magnitude."); U.S.S.G. § 2Q1.2 Application Notes ("Although other sections of the guidelines generally prescribe a base offense level of 6 for regulatory violations, § 2Q1.2 prescribes a base offense level of 8 because of the inherently dangerous nature of hazardous and toxic substances and pesticides."). ·

For these reasons, we reject Defendant Sumner's challenge to the validity of U.S.S.G. § 2Q1.2.

## B.

 The district court enhanced Appellant's offense level by four for discharge without a permit as required by § 2Q1.2(b)(4). Defendant Sumner contends that the district court's application of the four-level enhancement under § 2Q1.2(b)(4) constitutes impermissible "double counting" because his conduct, storing and disposing of hazardous waste without a permit, was punished twice, once under § 2Q1.2(a) for his statutory violation, and then again under § 2Q1.2(b)(4) which provides for a 4 level increase if the offense involved storage or disposal without a permit.

The Fifth Circuit rejected a similar argument in *United States v. Goldfaden*, 959 F.2d 1324, 1331 (5th Cir.1992). The court held that a defendant convicted of unlawful waste discharge without permit was properly subjected to an offense level enhancement under § 2Q1.2(b)(4) because the "offense involved a discharge without a permit."

In *United States v. Ellen*, 961 F.2d 462, 468 (4th Cir.1992), *cert. denied*, 506 U.S. 875, 113 S.Ct. 217, 121 L.Ed.2d 155 (1992), the defendant challenged the district court's upward adjustments under § 2Q1.3 because the base offense for which he was charged had as elements the very same conduct used to support the upward adjustments. The Fourth Circuit rejected the defendant's double counting argument. The Court reasoned that the enhancements rationally reflect the Guideline's graduated adjustment scheme. *Ellen*, 961 F.2d at 468 (quoting *United States v. Williams*, 954 F.2d 204, 207 (4th Cir. 1992)). The incremental adjustment schedule is logically structured to advance the Guidelines' fundamental goal of proportionality in sentencing. *Id.*

Section 2Q1.2 is structured in the same manner as § 2Q1.3. Section 2Q1.2 governs sentencing for a wide range of environmental crimes involving hazardous or toxic substances or pesticides. Section 2Q1.2(a) provides for a Base Offense Level for all of these offenses. Section 2Q1.2(b) provides for adjustments upwards or downwards depending on the specific offense characteristics.

 The base offense level provided in § 2Q1.2(a) applies to offenses that do not involve the failure to obtain a permit. Accordingly, the enhancement under § 2Q1.2(b) for storage or disposal without a permit does not provide a second penalty for the same

conduct. We are satisfied that the district court did not engage in double counting when it enhanced defendant's offense level under § 2Q1.2(b). As we noted in *United States v. Perkins,* 89 F.3d 303, 310 (6th Cir.1996), "no double counting occurs where, although the conduct underlying two enhancements is the same, a single guideline provision requires the district court to increase the defendant's sentence based on different aspects of the defendant's conduct."

### C.

Finally, Defendant Sumner contends that the district court abused its discretion when it refused to grant a downward departure from the sentence required by the guidelines.

■ A district court's decision not to depart downward from the Guidelines range is not appealable unless the court's decision was based upon an erroneous belief that the court lacked any authority to depart downward as a matter of law. *United States v. Ebolum,* 72 F.3d 35, 37 (6th Cir.1995).

The transcript of the sentencing hearing reveals without question that the district judge's refusal to depart downward was based upon an exercise of discretion, not upon a legal determination that he had no authority to depart. Accordingly, the district court's refusal to grant a downward departure is not reviewable on appeal.

### VI.

Having found no reversible error in the trial proceedings or the sentencing, we AFFIRM the convictions of Defendants Kelley and Sumner and AFFIRM the sentence of Defendant Sumner.