No. 99–323. HANOUSEK *v.* UNITED STATES. C. A. 9th Cir. Certiorari denied.

JUSTICE THOMAS, with whom JUSTICE O'CONNOR joins, dissenting.

In 1994, petitioner Edward Hanousek, Jr., was employed by the Pacific & Arctic Railway and Navigation Company as the roadmaster of the White Pass & Yukon Railroad. In that capacity, petitioner supervised a rock quarrying project at a site known as "6-mile," which is located on an embankment 200 feet above the Skagway River six miles outside of Skagway, Alaska. During rock removal operations, a backhoe operator employed by Hunz & Hunz, an independent contractor retained before petitioner was hired, accidentally struck a petroleum pipeline near the railroad tracks. The operator's mistake caused the pipeline to rupture and spill between 1,000 and 5,000 gallons of oil into the river.

Petitioner, who was off duty and at home when the accident occurred, was indicted and convicted under the Clean Water Act (CWA or Act), 86 Stat. 859, 33 U. S. C. §§ 1319(c)(1)(A), 1321(b)(3), for negligently discharging oil into a navigable water of the United States.[1] Petitioner was fined $5,000 and sentenced to sequential terms of six months' imprisonment, six months in a halfway house, and six months of supervised release. On appeal, petitioner argued, among other things, that it would violate his due process rights to impose criminal liability for ordinary negligence in discharging oil into the river.

In rejecting the due process claim, the United States Court of Appeals for the Ninth Circuit reasoned, in part, that the criminal provisions of the CWA are "public welfare legislation" because the CWA "is designed to protect the public from potentially harmful or injurious items" and criminalizes "'a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the com-

---

[1] Section 1319(c)(1)(A) provides that anyone who "negligently [violates certain provisions of the CWA] shall be punished by a fine of not less than $2,500 nor more than $25,000 per day of violation, or by imprisonment for not more than 1 year, or by both." Section 1321(b)(3) prohibits "[t]he discharge of oil . . . into or upon the navigable waters of the United States."

munity's health or safety.'" 176 F. 3d 1116, 1121 (CA9 1999) (quoting *Liparota* v. *United States*, 471 U. S. 419, 433 (1985)). Whether the CWA is appropriately characterized as a public welfare statute is an issue on which the Courts of Appeals are divided. Compare, *e. g., United States* v. *Kelley Technical Coatings, Inc.*, 157 F. 3d 432, 439, n. 4 (CA6 1998) ("[V]iolations of the CWA fit squarely within the public welfare offense doctrine"), and *United States* v. *Weitzenhoff*, 35 F. 3d 1275, 1286 (CA9 1993) ("The criminal provisions of the CWA are clearly designed to protect the public at large from the potentially dire consequences of water pollution . . . and as such fall within the category of public welfare legislation"), with *United States* v. *Ahmad*, 101 F. 3d 386, 391 (CA5 1996) (rejecting the argument that the CWA is public welfare legislation).

Whatever the merits of petitioner's underlying due process claim, I think that it is erroneous to rely, even in small part, on the notion that the CWA is a public welfare statute. We have said that "to determine as a threshold matter whether a particular statute defines a public welfare offense, a court must have in view some category of dangerous and deleterious devices that will be assumed to alert an individual that he stands in 'responsible relation to a public danger.'" *Staples* v. *United States*, 511 U. S. 600, 613, n. 6 (1994). See also *id.*, at 628–629 (STEVENS, J., dissenting) ("'Public welfare' offenses . . . regulate 'dangerous or deleterious devices or products or obnoxious waste materials'") (quoting *United States* v. *International Minerals & Chemical Corp.*, 402 U. S. 558, 565 (1971)). Although provisions of the CWA regulate certain dangerous substances, this case illustrates that the CWA also imposes criminal liability for persons using standard equipment to engage in a broad range of ordinary industrial and commercial activities. This fact strongly militates against concluding that the public welfare doctrine applies. As we have said, "[e]ven dangerous items can, in some cases, be so commonplace and generally available" that we would not consider regulation of them to fall within the public welfare doctrine. *Staples*, 511 U. S., at 611. I think we should be hesitant to expose countless numbers of construction workers and contractors to heightened criminal liability for using ordinary devices to engage in normal industrial operations.

We have also distinguished those criminal statutes within the doctrine of "public welfare offenses" from those outside it by

considering the severity of the penalty imposed. See, *e. g., id.*, at 616–618. We have said, with respect to public welfare offenses, that "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." *Morissette* v. *United States*, 342 U. S. 246, 256 (1952). See also Sayre, Public Welfare Offenses, 33 Colum. L. Rev. 55, 72 (1933) (stating that it is a "cardinal principle" of public welfare offenses that the penalty not be severe). The CWA provides that any person who "negligently" violates the Act may be imprisoned for up to one year. § 1319(c)(1). A second negligent violation of the Act may subject a person to imprisonment for up to two years. *Ibid.* The CWA also contains a felony provision that provides that any person who "knowingly" violates § 1321(b)(3) "shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment shall be by a fine of not more than $100,000 per day of violation, or by imprisonment of not more than 6 years, or by both." § 1319(c)(2).[2] The seriousness of these penalties counsels against concluding that the CWA can accurately be classified as a public welfare statute.

The Court of Appeals disregarded these factors, and relied instead on our previous statements that public welfare offenses regulate "'conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety.'" 176 F. 3d, at 1121 (quoting *Liparota* v. *United States, supra*, at 433). But we have never held that any statute can be described as creating a public welfare offense so long as the statute regulates conduct that is known to be subject to extensive regulation and that may involve a risk to the community. Indeed, such a suggestion would extend this narrow doctrine to virtually any criminal statute applicable to industrial activities. I presume that in today's heavily regulated society, any person engaged in industry is aware that his activities are the object of sweeping regulation and that an

---

[2] Some courts interpreting the felony provisions of the CWA have used the public welfare doctrine to determine that a person may "knowingly" violate the statute even if he is not aware that he is violating the law. See, *e. g., United States* v. *Weitzenhoff*, 35 F. 3d 1275, 1284–1286 (CA9 1993).

industrial accident could threaten health or safety. To the extent that any of our prior opinions have contributed to the Court of Appeals' overly broad interpretation of this doctrine, I would reconsider those cases. Because I believe the Courts of Appeals invoke this narrow doctrine too readily, I would grant certiorari to further delineate its limits.