[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 20, 2004
THOMAS  K. KAHN
CLERK**

No. 02-16627

D.C. Docket No. 01-08100-CR-KLR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EMILIO A. PEREZ,

Defendant-Appellant.

Appeal from the United States District Court for the
Southern District of Florida

**(April 20, 2004)**

Before WILSON and KRAVITCH, Circuit Judges, and GOLDBERG[*], Judge.

GOLDBERG, Judge:

A jury convicted Emilio Perez ("Perez") of two counts of knowingly and

---

[*] Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

unlawfully discharging pollutants into wetlands of the United States without a permit, in violation of 33 U.S.C. §§ 1311(a), 1319(c)(2)(A), and 1344, and 18 U.S.C. § 2, and one count of knowingly and willfully injuring property of the Department of the Army Corps of Engineers, which resulted in damages exceeding $1,000, in violation of 18 U.S.C. §§ 1361 and 1362. The district court sentenced Perez to concurrent terms of imprisonment of 36 months on Counts 1, 2, and 3, as well as three years of supervised release. The court also ordered him to pay restitution jointly and severally with his codefendant Emi-Sar Trucking & Equipment, Inc. ("Emi-Sar"), and imposed a fine of $25,000. On appeal, Perez contends that his sentence should be vacated because the district court erred in increasing his base offense level under United States Sentencing Guideline ("U.S.S.G.") §§ 2Q1.3(b)(1)(A) and 2Q1.3(b)(4). For the reasons set forth below, we affirm Perez's convictions and sentence.

## I. BACKGROUND

Perez was owner, operator, president, and director of codefendant Emi-Sar, a business that hauled aggregate and solid waste and vegetative debris. Perez was also president of Panokee Investments, which owned the majority of "Bay Bottom" and "Sand Cut," two federally protected wetland sites in Palm Beach

County, Florida.[1]  From September 1999 through May 2001, agents and officials from the United States Environmental Protection Agency, the Army Corps of Engineers, the Palm Beach County Sheriff's Office, the State of Florida Department of Environmental Protection, and the Palm Beach County Solid Waste Authority investigated unlawful dumping of pollutants by Emi-Sar trucks on both sites.  Investigators observed unsuitable materials at the sites, including solid waste, vegetative debris mixed with plastic, shoes, clothing, household waste, mulch, woody debris, garbage, asphalt, construction materials, hydraulic fluid, car batteries, electrical wire, and horse manure.

Federal and municipal permits were not requested by or issued to Perez or Emi-Sar for the dumping of the unsuitable materials.  Over the course of the investigation, agents observed that the materials had raised the elevation of the wetlands, with three to five feet of pollutants in certain areas, resulting in the loss of wetland function and habitat.  Aerial photographs of Bay Bottom, preceding and post-dating Perez's ownership of the site, showed the progression of the

---

[1]  Sand Cut is a two-acre site in South Florida, near Lake Okeechobee and adjacent to Perez's residence, bordered by private railroad tracks and the Herbert Hoover Dike, and extending into an area designated for the Army Corps of Engineers.  Bay Bottom is a forty-acre site, also in the Canal Point area of Palm Beach County.  It is undisputed that both wetland sites are "navigable waters" of the United States, federally protected and subject to jurisdiction under the Clean Water Act.  Counts 1 and 2 pertain to both sites, while Count 3 refers to a portion of the Sand Cut site.

3

dumping, which noticeably changed the composition of the water. Perez admitted that his trucks were responsible for dumping waste at both sites.[2] Moreover, the authorities informed Perez that his actions violated federal law and required the appropriate permits. Although the Army Corps of Engineers issued cease-and-desist orders to Perez and Emi-Sar, he continued to dump unlawfully.

On August 7, 2001, a federal grand jury in the Southern District of Florida indicted Perez and Emi-Sar on two counts of knowingly and unlawfully discharging pollutants into wetlands of the United States without a permit, in violation of 33 U.S.C. §§ 1311(a), 1319(c)(2)(A), and 1344, and 18 U.S.C. § 2, and one count of knowingly and willfully injuring property of the Department of the Army Corps of Engineers, which resulted in damages exceeding $1,000, in violation of 18 U.S.C. §§ 1361 and 1362. The jury returned guilty verdicts as to both defendants on all counts.

Perez was sentenced under U.S.S.G. §§ 2Q1.3(b)(1)(A) and 2Q1.3(b)(4), the guidelines governing the mishandling of nontoxic environmental pollutants. U.S.S.G. § 2Q1.3(b)(1)(A) provides a sentence enhancement by six levels for "ongoing, continuous, or repetitive discharge." Following the sentencing hearing,

---

[2] For instance, Perez admitted to Assistant Deputy William Timmsen of the Palm Beach County Sheriff's Office that he was dumping materials in hopes of constructing a makeshift ramp to transport his jet skis to Lake Okeechobee. Perez made similar admissions to other authorities.

the district court found the enhancement warranted, but reduced it from six levels to four because the materials discharged were not the "worst type of pollutants." U.S.S.G. § 2Q1.3(b)(4) dictates a sentence enhancement by four levels if the offense involved discharge of pollutants without a permit. As advised by the probation officer, the district court applied the four-level enhancement as well.

## II. DISCUSSION

Perez argues that the district court erred in giving him a four-level enhancement under U.S.S.G. § 2Q1.3(b)(1)(A), because the court did not require the government to prove that his dumping actions resulted in "actual environmental contamination." He also contends that the district court engaged in impermissible double counting by enhancing his sentence under § 2Q1.3(b)(4) for failure to obtain a permit. According to Perez, this second four-level enhancement was not warranted because his base offense level already accounted for his failure to obtain a permit.

### A. § 2Q1.3(b)(1)(A) Enhancement

"We review the factual findings of a district court at sentencing for clear error, and review its interpretation of the Sentencing Guidelines de novo." United States v. Eidson, 108 F.3d 1336, 1344 (11th Cir. 1997).

The district court gave Perez a four-level enhancement under U.S.S.G. §

5

2Q1.3(b)(1), which states, "(A) If the offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a pollutant into the environment, increase by 6 levels; or (B) if the offense otherwise involved a discharge, release, or emission of a pollutant, increase by 4 levels." U.S. SENTENCING GUIDELINES MANUAL § 2Q1.3(b)(1) (2001). Application Note 4 of the Commentary to § 2Q1.3 adds:

> Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation, a departure of up to two levels in either direction from that prescribed in these specific offense characteristics may be appropriate.

Id. § 2Q1.3, Application Note 4.

Under the government's reading of the Commentary, the government must prove only that the defendant's conduct fits the language of the guideline; if the government proves the defendant was responsible for the "discharge, release, or emission" of a pollutant, it has met its burden. According to this interpretation, the guideline assumes actual environmental contamination if the text of § 2Q1.3(b)(1) itself is met.

However, Perez insists that an assumption of actual environmental

6

contamination is inappropriate since § 2Q1.3(b)(1)(A) pertains to dumped

materials that are not "hazardous or toxic." Instead, Perez contends, the

government had the burden to prove, by a preponderance of the evidence, that the

dumping caused actual environmental contamination.

While interpreting § 2Q1.3 is an issue of first impression in this Circuit, we

have addressed the interpretation of § 2Q1.2, which parallels § 2Q1.3 exactly.[3] In

United States v. Cunningham, 194 F.3d 1186 (11th Cir. 1999), we held that §

2Q1.2 does not impose any additional requirements on the application of the §

2Q1.2(b)(1) enhancement beyond those contained in the guideline itself. Id. at

1201-02. That is, if the government demonstrates "a discharge, release, or

emission of a hazardous substance," the enhancement applies. Id. at 1202.

---

[3] U.S.S.G. § 2Q1.2(b)(1) states:
(A) If the offense resulted in an ongoing, continuous, or repetitive discharge,
release, or emission of a hazardous or toxic substance or pesticide into the
environment, increase by 6 levels; or
(B) if the offense otherwise involved a discharge, release, or emission of a
hazardous or toxic substance or pesticide, increase by 4 levels.
U.S. SENTENCING GUIDELINES MANUAL § 2Q1.2(b)(1) (2001). Application Note 5 of the
Commentary to § 2Q1.2 states:
Subsection (b)(1) assumes a discharge or emission into the environment resulting
in actual environmental contamination. A wide range of conduct, involving the
handling of different quantities of materials with widely differing propensities,
potentially is covered. Depending upon the harm resulting from the emission,
release or discharge, the quantity and nature of the substance or pollutant, the
duration of the offense and the risk associated with the violation, a departure of up
to two levels in either direction from the offense levels prescribed in these specific
offense characteristics may be appropriate.
Id. § 2Q1.2, Application Note 5.

Accordingly, the government does not have to prove actual environmental contamination for § 2Q1.2(b)(1) to apply.[4]  Id.  We reach the same conclusion with respect to § 2Q1.3.  The Commentary for § 2Q1.3 does not impose any additional requirements on the application of the § 2Q1.3(b)(1)(A) enhancement beyond those contained in the guideline itself.

Our interpretation of the sentencing guidelines and accompanying commentary is governed by traditional rules of statutory construction.  See United States v. Saunders, 318 F.3d 1257, 1264 (11th Cir. 2003); United States v. McClain, 252 F.3d 1279, 1285 (11th Cir. 2001).  Where the same language appears in two guidelines, it is generally presumed that the language bears the same meaning in both.  Saunders, 318 F.3d at 1264.  It is also generally presumed that the disparate inclusion or exclusion of language is intentional and purposeful. Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983); see also United States v. Giltner, 972 F.2d 1563, 1565 (11th Cir. 1992).  Accordingly, where two sentencing guidelines are worded identically, absent any distinctions or clarifying words noted in the Commentary, they should be interpreted and applied

---

[4]  In Cunningham, we joined the Second and Fifth Circuits in holding that proof of actual environmental contamination is not required for application of the § 2Q1.2(b)(1) enhancement. See United States v. Liebman, 40 F.3d 544, 550-51 (2d Cir. 1994) (proof of actual environmental contamination not required); United States v. Goldfaden, 959 F.2d 1324, 1331 (5th Cir. 1992) (same).

in the same manner. See Comm'r v. Lundy, 516 U.S. 235, 250, 116 S. Ct. 647, 655 (1996) ("The interrelationship and close proximity of these provisions of the statute presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.") (citations and internal quotation marks omitted); Hunter v. United States, 101 F.3d 1565, 1575 n.8 (11th Cir. 1996) ("It is a basic rule of statutory construction that identical words [even when] used in different parts of the same act are intended to have the same meaning.") (citing Sullivan v. Stroop, 496 U.S. 478, 484, 110 S. Ct. 2499, 2504 (1990) (alteration in original) (internal quotation marks omitted); United States v. Honken, 184 F.3d 961, 969 (8th Cir. 1999) ("It should generally be presumed that the same word used in different parts of the guidelines has the same meaning.").

Here, § 2Q1.3 parallels § 2Q1.2 exactly, but applies to pollutants that are not hazardous, toxic, or pesticides.[5] Nevertheless, the Commentary accompanying §§ 2Q1.3 and 2Q1.2 does not dictate any practical distinction in applying the two guidelines. Rather, the Commentary governing §§ 2Q1.3(b)(1) and 2Q1.2(b)(1) is

_____

[5] A substance can be classified as a pollutant even though it is not designated as hazardous. United States v. Gordon Paul Cooper, 173 F.3d 1192, 1205 (9th Cir. 1999); see also United States v. W. Indies Transp., Inc., 127 F.3d 299, 315 (3d Cir. 1997) (rejecting the contention that raw sewage is not a pollutant because it is fully biodegradable).

9

identical. Had the Sentencing Commission intended for § 2Q1.3 to be applied differently, we presume the Commission would have inserted clarifying language. In the absence of any such language, Perez's argument is misplaced. Accordingly, as we held in Cunningham with respect to § 2Q1.2, the guideline here assumes actual environmental contamination if the text of § 2Q1.3(b)(1) itself is met. Therefore, the district court properly applied the § 2Q1.3(b)(1)(A) enhancement because the government proved that Perez engaged in repeated, unlawful dumping of pollutants in federally protected wetlands, without a permit.

B. § 2Q1.3(b)(4) Enhancement

We review a claim of double counting under the United States Sentencing Guidelines de novo. United States v. Naves, 252 F.3d 1166, 1168 (11th Cir. 2001).

The district court gave Perez a four-level enhancement under U.S.S.G. § 2Q1.3(b)(4), which states, "If the offense involved a discharge without a permit or in violation of a permit, increase by 4 levels." U.S. SENTENCING GUIDELINES MANUAL § 2Q1.3(b)(4) (2001). Application Note 7 of the Commentary to § 2Q1.3 explains:

> Subsection (b)(4) applies where the offense involved violation of a permit, or where there was a failure to obtain a permit when one was required. Depending upon the nature and quantity of the substance

10

involved and the risk associated with the offense, a departure of up to two levels in either direction may be warranted.

Id. § 2Q1.3, Application Note 7.

Perez contends that applying the § 2Q1.3(b)(4) enhancement to his sentence constitutes impermissible double counting.[6] According to Perez's theory, failure to obtain a permit was already taken into account by the Sentencing Commission in formulating the base offense level set out in § 2Q1.3.

In response, the government asserts that the base offense level for § 2Q1.3 contemplates violations that do not involve the failure to obtain a permit. Indeed, in this case, Perez's base offense level does not account for the permit element of his criminal conduct. Therefore, according to the government, the four-level

---

[6] Double counting is a derivative of the Double Jeopardy Clause, which prohibits the imposition of multiple or redundant punishments for one offense. See U.S. CONST. amend. V (no person shall be "subject for the same offence to be twice put in jeopardy of life or limb"); see also Ex parte Lange, 85 U.S. (18 Wall.) 163, 168 (1873) ("If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence."). "Impermissible double counting occurs . . . when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Rodriguez-Matos, 188 F.3d 1300, 1309 (11th Cir. 1999) (citation omitted). However, double counting is permitted if the Sentencing Commission intended the result, and the applicable sentence enhancements concern conceptually separate notions related to sentencing. United States v. Aimufua, 935 F.2d 1199, 1201 (11th Cir. 1990); see also United States v. Box, 50 F.3d 345, 359 (5th Cir. 1995) ("Double counting is prohibited only if the particular guidelines at issue forbid it."); United States v. Wong, 3 F.3d 667, 670 (3d Cir. 1993) ("[T]he Sentencing Guidelines are explicit when double counting is forbidden . . . ."); United States v. Curtis, 934 F.2d 553, 556 (4th Cir. 1991) (same); United States v. Campbell, 967 F.2d 20, 25 (2d Cir. 1992) (double counting is permissible "where a single act is relevant to two dimensions of the Guideline analysis").

11

enhancement for failure to obtain a permit does not amount to impermissible double counting.

While the interpretation of § 2Q1.3(b)(4) is also an issue of first impression in this Circuit, the Fourth, Fifth, and Sixth Circuits have addressed and rejected the same argument made by Perez. In United States v. Ellen, 961 F.2d 462 (4th Cir. 1992), the defendant (like Perez) was convicted of illegally discharging pollutants into wetlands in violation of the Clean Water Act. Id. at 463. The district court enhanced Ellen's sentence under §§ 2Q1.3(b)(1)(A) and 2Q1.3(b)(4) for "ongoing, continuous, or repetitive" discharge of nonhazardous pollutants without a permit. Id. at 468. On appeal, Ellen argued that "the base offense for which he was charged had as [an] element[] . . . discharge without a permit and that, as a result, imposition of the enhancement[] result[ed] in impermissible double counting." Id. However, the Fourth Circuit dismissed Ellen's argument, explaining that "the Sentencing Commission plainly understands the concept of double counting, and expressly forbids it where it is not intended." Id. (citation omitted). The court added, "Because the Guidelines are explicit when double counting is forbidden, an adjustment that clearly applies to the conduct of an offense must be imposed unless the Guidelines expressly exclude its applicability[.]" Id. (internal citations and quotations omitted).

Moreover, the Fourth Circuit observed that § 2Q1.3 applies to offenses that do not involve the failure to obtain a permit.[7] Id. at 469. Accordingly, the § 2Q1.3(b)(4) enhancement serves to increase the penalty for those offenders who do violate a permit requirement. Id.; see also United States v. Kelley Technical Coatings, Inc., 157 F.3d 432, 444 (6th Cir. 1998) (holding that the enhancement under § 2Q1.2(b) for storage or disposal of hazardous material without a permit does not penalize a defendant twice for the same conduct since § 2Q1.2(a) applies to offenses that do not involve the failure to obtain a permit); United States v. Goldfaden, 959 F.2d 1324, 1331 (5th Cir. 1992) (same).

We agree with the reasoning employed by the Fourth, Fifth, and Sixth Circuits. Accordingly, we hold that application of the § 2Q1.3(b)(4) enhancement to Perez's base offense level does not constitute impermissible double counting. Perez's base offense level under § 2Q1.3 only involved the "mishandling" of environmental pollutants.[8] His failure to procure a permit was a distinct offense which, pursuant to the sentencing guidelines, warranted its own enhancement.

Indeed, as its title indicates and as the Fourth Circuit observed, § 2Q1.3

---

[7] For instance, the Fourth Circuit noted that § 2Q1.3(b)(4) applies to 33 U.S.C. §§ 409 and 411, which require the marking and removal of sunken vessels.

[8] Section 2Q1.3 is entitled "Mishandling of Other Environmental Pollutants; Recordkeeping, Tampering, and Falsification." U.S. SENTENCING GUIDELINES MANUAL § 2Q1.3 (2001).

applies to a variety of offenses under the Clean Water Act; it is not limited to offenses involving the failure to obtain a permit. Ellen, 961 F.2d at 469. For instance, it is a violation of the Clean Water Act to falsify or tamper with an entity's discharge sampling methods. 33 U.S.C. § 1319(c)(4) (1990). Such conduct clearly has nothing to do with failing to procure a permit. Thus, a district court that enhances the sentence of an offender for failing to obtain a permit where one is required does not punish him "twice."

In this case, Perez's conduct conforms with the language of the § 2Q1.3(b)(4) enhancement exactly, since he disposed of pollutants without a permit. The Sentencing Commission's mandate (which authorizes it to issue enhancements that are rationally related to, and in furtherance of, a legitimate governmental objective)[9] suggests that a district court not depart from an applicable guideline in the absence of mitigating circumstances. See United States v. Delvecchio, 920 F.2d 810, 813 (11th Cir. 1991) ("A departure . . . will only be warranted where the court . . . finds that there exists 'a[] . . . mitigating

---

[9] The Sentencing Commission has the authority to promulgate, review, and revise binding sentencing guidelines to promote consistency and uniformity in sentencing practices. Buford v. United States, 532 U.S. 59, 66, 121 S. Ct. 1276, 1281 (2001); Mistretta v. United States, 488 U.S. 361, 367-69, 109 S. Ct. 647, 652-53 (1989); see also Naves, 252 F.3d at 1169 (explaining that the Sentencing Commission is authorized to provide an enhancement "as long as there is a rational relationship between the enhancement and a legitimate governmental objective").

14

circumstance . . . not adequately taken into consideration by the Sentencing Commission in formulating the guidelines[.]'") (quoting 18 U.S.C. § 3553(b) (1988)).  The legitimate governmental objective behind the § 2Q1.3(b)(4) enhancement is to increase the penalty for those offenders who contravene the limitations of a permit, or act without one at all.  See Ellen, 961 F.2d at 469.  Here, in addition to dumping pollutants repeatedly in protected wetlands, Perez did not procure, or even apply for, a permit.[10]  Nor did he raise any valid mitigating circumstances at the sentencing hearing.  As a result, the district court properly refused to depart from the applicable guideline.

Moreover, as the Fourth Circuit pointed out in Ellen, the Sentencing Commission understands the concept of double counting, and expressly forbids it where it is not intended.  Id. at 468 (citation omitted).  If the Sentencing

---

[10]  To buttress his double counting claim, Perez briefly notes that his failure to obtain a permit represents a factual impossibility, since he never could have obtained a permit for his dumping activities at Bay Bottom and Sand Cut.  Perez's argument is unavailing for two reasons.  First, the legislative history of the Clean Water Act reveals that "the legislature declined to abandon the permit requirement[,]" even when obtaining a permit would not be feasible.  Natural Res. Def. Council, Inc. v. Costle, 568 F.2d 1369, 1375-76 (D.C. Cir. 1977).  Second, we addressed and rejected an analogous claim of factual impossibility in Driscoll v. Adams, 181 F.3d 1285, 1289 (11th Cir. 1999); see also United States v. M/G Transp. Services, Inc., 173 F.3d 584, 588 (6th Cir. 1999) (finding no due process violation where the defendants were prosecuted under the Clean Water Act for discharging pollutants without a permit, even though the defendants could never have received a permit for the quantity and type of pollutants they dumped); Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., 73 F.3d 546, 559 (5th Cir. 1996) (observing that the plain language of the Clean Water Act imposes liability for discharges without a permit and facially admits of no exception where the required permit is not available).

15

Commission believed that applying the § 2Q1.3(b)(4) enhancement might result in impermissible double counting in some situations, the Commission could have included an application note expressing its concern. See United States v. Kuhn, 345 F.3d 431, 440 (6th Cir. 2003) ("If the Sentencing Commission believed the application of both [U.S.S.G. §§ 2Q1.3(b)(1)(B) and 2Q1.3(b)(4)] constituted double counting, it would have added an application note . . . ."). However, the Commentary accompanying § 2Q1.3 does not even mention double counting, let alone forbid it in this case. Accordingly, we see no reason to vacate Perez's sentence. The district court properly applied the § 2Q1.3(b)(4) enhancement as a result of Perez's failure to obtain a permit.

### III. CONCLUSION

Finding no errors in the district court's application of U.S.S.G. §§ 2Q1.3(b)(1)(A) and 2Q1.3(b)(4), we AFFIRM Perez's sentence.