The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

THORO PRODUCTS COMPANY, Inc., a Colorado corporation, and Richard E. Newman, Defendants–Appellants.

No. 99CA1365.

Colorado Court of Appeals, Div. II.

March 29, 2001.

As Modified on Denial of Rehearing May 17, 2001.

Certiorari Granted April 29, 2002.

Ken Salazar, Attorney General, Robert M. Russel, Assistant Solicitor General, Dennis Hall, Special Assistant Attorney General, Eric Nelson, Special Assistant Attorney Gen-

eral, Nancy Bauer Egelhoff, Special Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Horowitz & Wake, Jay S. Horowitz, Robert T. Fishman, Denver, CO, for Defendants–Appellants.

Opinion by Judge CASEBOLT.

Defendants, Thoro Products Company, Inc. (Thoro) and its president, Richard E. Newman, appeal the judgments of conviction and sentences entered upon jury verdicts finding them guilty of disposal and storage of hazardous waste without a permit in violation of the Hazardous Waste Act, § 25–15–310(1)(b), C.R.S.2000. Thoro also appeals its conviction for criminal mischief and the corresponding sentence. We affirm in part, reverse in part, and remand with directions.

Thoro began storing chlorinated solvents manufactured by others in the late 1960's. Defendants admitted that hazardous solvents had leaked or spilled during their handling in the 1970's when the products were transferred from railcars to Thoro's storage tanks, and from those tanks to tank trucks dispatched by customers of the solvent manufacturer. In 1985, Thoro ceased handling and storing the products.

State officials received a complaint from an adjacent property owner and commenced their investigation in 1996. During that investigation, officials discovered that chlorinated solvents were present in water wells located on property adjacent to Thoro's plant. They also discovered that Thoro had stored two 55 gallon drums containing a mixture of hazardous chemicals without obtaining the necessary permit.

Following defendants' indictment in September 1997, the conviction at issue here resulted. Finding extraordinary aggravating circumstances, the trial court sentenced Newman to the custody of the Department of Corrections for eight years for the disposal conviction and six years for improper storage, to run consecutively. The court sentenced Thoro to probation for ten years and assessed a fine of $750,000 for criminal mischief, $100,000 for improper disposal, and

$100,000 for storage of hazardous waste without a permit. This appeal followed.

I.

Defendants contend that, because they last disposed of the solvents on their property in 1985, the applicable statute of limitation prohibits their prosecution for improper disposal of hazardous waste. Accordingly, they contend the trial court lacked jurisdiction, and the charges for hazardous waste disposal without a permit must be dismissed. We agree.

■ The purpose of the statute of limitation in a criminal case is to protect individuals from defending themselves against stale criminal charges, to prevent punishment for acts committed in the remote past, and to provide the accused with notice of the decision to prosecute and the general nature of the charge with sufficient promptness to allow the preparation of a defense. *Higgins v. People*, 868 P.2d 371 (Colo.1994).

■ In criminal cases, statutes of limitation are jurisdictional and operate as a bar to prosecution. Consequently, a conviction obtained in violation of the applicable statute of limitation is void. *Bustamante v. District Court*, 138 Colo. 97, 329 P.2d 1013 (1958); *People v. Verbrugge*, 998 P.2d 43 (Colo.App. 1999).

Section 25–15–310, C.R.S.2000, provides in pertinent part that: "On or after [November 2, 1984], no person shall ... [t]reat, store, or dispose of any hazardous waste identified or listed pursuant to this article ... without having obtained a permit...." A person who knowingly violates this provision is guilty of a felony and may be punished by imprisonment not to exceed four years. Section 25–15–310(3), C.R.S.2000.

The applicable statute of limitation permits prosecution for disposal of hazardous waste within two years from the date the Department of Public Health and Environment discovers the alleged violation, or within five years after the date upon which the alleged violation occurred, whichever is earlier. Section 25–15–308(4)(a), C.R.S.2000. If charges are not brought within these periods, the department may issue a remediation order

within two years of discovering a disposal violation. However, it may not "seek any administrative, civil, or criminal penalties." Section 25–15–308(4)(b) C.R.S.2000.

Defendants admit they allowed hazardous wastes to spill and leak onto the ground. However, they contend that, because they no longer possessed any solvent as of 1985, such was the last date upon which they "disposed" of such wastes within the meaning of the statute. Since they were not charged until 1997, they argue their convictions were obtained in violation of the five-year statute of limitation.

The indictment alleged that between 1964 and 1990 defendants disposed of the solvents in a manner that allowed them to spill onto the ground, and also alleged that defendants' violation continued to the date of indictment because they allowed the solvents to percolate into the soil without remediation. At trial, the prosecution asserted that defendants had committed a crime when they disposed of hazardous waste without a permit, and by doing so, had triggered a legal obligation to obtain a permit, which continued until the waste was cleaned up. Hence, the prosecution asserted defendants were liable for continuous improper disposal.

We note first that neither party relies upon the two-year discovery period specified in the statute of limitation. The issue, then, is when defendants' disposal of hazardous waste occurred, and that requires us to analyze the definition of "disposal" contained in the statute.

Section 25–15–101(3), C.R.S.2000, defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any hazardous waste into or on any land or water" so that it may enter the environment, be emitted into the air, or be discharged into any waters.

■ When interpreting a statute, we are guided by the intent of the General Assembly, which directs us to look first to the plain meaning of the words employed. *People v. Banks*, 9 P.3d 1125 (Colo.2000). We resort to rules of statutory construction and legislative history only if the words employed give rise to more than one meaning. *See Terry v.*

*People*, 977 P.2d 145 (Colo.1999); *People v. Terry*, 791 P.2d 374 (Colo.1990).

■ In interpreting statutes, we must construe each statutory provision in harmony with the overall statutory scheme. *Wilczynski v. People*, 891 P.2d 998 (Colo.1995). We must also avoid statutory constructions that lead to absurd results. *People v. Swain*, 959 P.2d 426 (Colo.1998).

■ If an ambiguity in a criminal statute exists and that ambiguity cannot be resolved, then we must construe the statute in favor of the defendant pursuant to the rule of lenity. *Fields v. Suthers*, 984 P.2d 1167 (Colo.1999).

Here, the statute defining "disposal" uses words that have different meanings. The verbs "discharge," "deposit," "inject," "dump," and "place" support an "active" interpretation of disposal, that is, one that requires an affirmative human act that concludes when the hazardous substance contacts the ground or water. *See Webster's Third New International Dictionary* 605, 644, 701, 1164, 1727 (1986).

The words "spilling" and "leaking" lend themselves to an active interpretation as well. However, they also may be interpreted as having passive connotations, as when a person, through fault or mistake, allows a liquid to spill from a container or leak through an opening. "Leak" can also connote an escape from a particular area, container, or vessel. *See Webster's Third New International Dictionary, supra,* at 1285, 2195. Hence, leaking can be interpreted as an act that endures as long as the escape of material continues.

The active construction supports defendants' interpretation of disposal; the passive interpretation supports the prosecution's. Both are viable interpretations.

Colorado's statute proscribing hazardous waste disposal uses the same language as that contained in the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901, et seq. (1994), and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, et seq. (1994), federal statutory schemes concerning hazardous wastes. Consequently, we

agree with both parties that federal case law may be helpful. *See Colorado Civil Rights Commission v. Big O Tires, Inc.,* 940 P.2d 397 (Colo.1997) (federal law, though not controlling, is instructive on the issue of construction of a Colorado statute where the state and federal statutes are identical or substantially so).

Initially, we observe that gleaning firm conclusions from cases attempting to interpret RCRA and CERCLA is a herculean task. As one court has noted, "RCRA has an 'Alice in Wonderland' air about it." *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.,* 989 F.2d 1305, 1308 (2d Cir.1993). The meaning of "disposal" varies, depending upon the parties involved and the nature of the underlying action. *Compare In re Consolidated Land Disposal Regulation Litigation,* 938 F.2d 1386, 1389 (D.C.Cir.1991) (upholding EPA interpretation of RCRA regulations that, because "disposal" includes "leaking," it is a "continuous phenomenon rather than a discrete event"); *United States v. Power Engineering Co.,* 10 F.Supp.2d 1145 (D.Colo.1998) (under RCRA, "disposal" includes "leaking," so disposal continues when wastes migrate), *aff'd,* 191 F.3d 1224 (10th Cir.1999); *City of Toledo v. Beazer Materials & Services, Inc.,* 833 F.Supp. 646 (N.D.Ohio 1993) (disposal of wastes can be continuing violation in RCRA citizen suit if waste not remediated); *Gache v. Town of Harrison,* 813 F.Supp. 1037 (S.D.N.Y.1993) (waste remaining on land is a continuous violation of RCRA citizen suit provisions); *Acme Printing Ink Co. v. Menard, Inc.,* 812 F.Supp. 1498 (E.D.Wis.1992) ("disposal" definition includes continuous leaking under RCRA citizen suit provisions); and *United States v. Conservation Chemical Co.,* 619 F.Supp. 162 (W.D.Mo.1985) (RCRA could be applied to enjoin present leaking resulting from past disposal in imminent hazard action), *overruled on other grounds, United States v. Northeastern Pharmaceutical & Chemical Co.,* 810 F.2d 726 (8th Cir.1986), *with United States v. 150 Acres of Land,* 204 F.3d 698 (6th Cir.2000) (disposal limited to spills occurring by human intervention; passive movement of substances not within term); *ABB Industrial Systems, Inc. v. Prime Technology, Inc.,* 120 F.3d 351 (2d Cir.1997) (prior owners not liable under CERCLA or RCRA citizen suit provisions because, *inter alia,* none of terms defining "disposal" meant to encompass leaching of wastes); and *United States v. CDMG Realty Co.,* 96 F.3d 706 (3d Cir.1996) (rules of statutory construction indicate "disposal" requires active human conduct; prior owner who did not participate in initial disposal was therefore not liable under CERCLA).

Many of the above cases discuss disposal in terms of the civil provisions of their respective statutory schemes, provisions which vary from the criminal statute at issue here. Moreover, none of the cases defines disposal in light of an applicable statute of limitation. Thus, they do not provide significant help conclusively to discern the meaning of the term. The cases do, however, demonstrate that there is a divergence in the definition of "disposal."

Accordingly, we conclude that "disposal" is ambiguous. Thus, we may look to legislative history. Unfortunately, that review provides no illumination.

Looking to the statutory scheme as a whole, we observe that to construe "disposal" in the manner suggested by the People would, for all practical purposes, make the statute of limitation here a nullity. *Cf. Blecha v. People,* 962 P.2d 931 (Colo.1998) (sanctioning the state's theory that acts of concealment alone evidence continuation of a conspiracy would for all practical purposes wipe out the statute of limitation in conspiracy cases). That is, if we interpret "disposal" here as an act that endures until hazardous wastes no longer percolate through or exist in soil or water, then disposal effectively continues until the substance dissipates to the point where it is no longer hazardous, possibly eons later, or until remediation occurs. Under this interpretation, the limitation period would begin only at this possibly remote moment in time, a time that, in all probability, could seldom, if ever, conclusively be pinpointed.

In our view, the General Assembly did not intend such a result, because it would go against the very purpose for which statutes of limitation are enacted, *i.e.,* to protect indi-

viduals from having to defend themselves against stale criminal charges and to prevent punishment for acts committed in the remote past. *See Higgins v. People, supra.*

For these reasons, we must construe the statute in defendants' favor under the rule of lenity. *See People v. Lowe,* 660 P.2d 1261 (Colo.1983) (rule of lenity, as a tool of statutory construction, requires that courts resolve ambiguities in a penal code in the defendant's favor; it is a corollary of the rule of statutory construction that requires penal statutes to be construed against the government), *overruled in part on other grounds by Callis v. People,* 692 P.2d 1045 (Colo.1984); *see also People v. Newton,* 764 P.2d 1182 (Colo.1988) (rule of lenity requires that construction favoring the liberty interests of the accused should be adopted); *People v. Roybal,* 618 P.2d 1121 (Colo.1980); *Pigford v. People,* 197 Colo. 358, 593 P.2d 354 (1979) (criminal statutes are to be strictly construed in favor of the accused).

■ Accordingly, we conclude that, here, the last discrete act of disposal actuated by human conduct occurred no later than 1985. Hence, prosecution for disposal under § 25-15-310 is barred.

We acknowledge that this interpretation may have the effect of precluding prosecution of environmental crimes under the disposal portion of § 25-15-310 because such conduct may not come to light for many years following the act of disposal, and the statute of limitation provides for a bar dating from the *earlier* of two years from the date of discovery or five years from the act. This troubling result, however, could be ameliorated if the General Assembly changes the definition of disposal or changes the limitation bar to run from the *later* of two years from the date of discovery or five years from the act of disposal. Furthermore, the current statute of limitation is tolled during any period that the alleged violation is intentionally concealed, *see* § 25-15-308(4)(a), which provides a means for the prosecution to avoid operation of the limitation period.

■ Citing *Toussie v. United States,* 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), the People nevertheless contend that the General Assembly's intent was to classify disposal of hazardous waste without a permit as a continuing offense upon which the statute of limitation would not run until a permit was obtained or the property was cleaned up. We reject that contention.

*Toussie v. United States* sets forth a two-part test for determining whether an offense is a continuing one. First, does the explicit language of the substantive criminal statute compel such a conclusion? If not, is the nature of the crime nonetheless such that Congress assuredly intended that it be treated as a continuing one?

As the People note, it is true that § 25-15-310(3) allows the imposition of a fine "for each day of violation," which can be construed as making this a continuing offense. It is further true that, in another section of the Hazardous Waste Act, the General Assembly provided that each day of violation of a disposal site provision is a "separate offense," § 25-15-211, C.R.S.2000, from which one might infer that the General Assembly knew the difference between a continuing offense and separate offenses, and mandated continuing offense treatment for a violation of § 25-15-310.

■ However, this is immaterial to our analysis because, if a statute of limitation is part of the statutory scheme, a continuing offense remains subject to it. The limitation period runs from the last day on which the defendant committed the continuing offense. *See Model Penal Code* § 1.06 comment 3(a) (1985); 4 W. LaFave, J. Israel & N. King, *Criminal Procedure* § 18.5(a) (2d ed.1999). *Cf. Toussie v. United States, supra; United States v. WCI Steel, Inc.,* 72 F.Supp.2d 810 (N.D.Ohio 1999) (though RCRA violations are continuous, civil fines assessed for violations occurring within the statute of limitation period); *Harmon Industries, Inc. v. Browner,* 19 F.Supp.2d 988 (W.D.Mo.1998) (defendant's violation of RCRA's civil provisions for spilling waste was continuous violation until physical acts of spilling stopped; penalty assessed for each day of violation within the limitation period), *aff'd,* 191 F.3d 894 (8th Cir.1999).

■ Even assuming, *arguendo*, that disposal of hazardous waste without a permit was a continuing offense, defendants' prosecution for the crime is nonetheless barred because, as we have interpreted "disposal," defendants last disposed of hazardous wastes at least twelve years before their indictment.

Consequently, we conclude that defendants' convictions for disposal must be vacated, and on remand the trial court must dismiss the disposal charges. Given this disposition, we need not consider defendants' contention that those convictions violate the ex post facto clauses of the Colorado and United States Constitutions.

## II.

Defendants next contend that their convictions for storage of hazardous waste without a permit must be reversed because the jury instructions omitted an essential element of the crime. They assert that the instructions failed to apprise the jury that a defendant must have known the materials being stored were potentially harmful to people or to the environment, which defendants view as a structural error. We disagree.

Under § 18–1–503(4), C.R.S.2000, when a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears. *See Gorman v. People*, 19 P.3d 662 (Colo.2000).

As noted above, §§ 25–15–310(1)(b) & 25–15–310(3) provide in pertinent part that it is a felony for a person "knowingly" to "store . . . any hazardous waste identified or listed pursuant to this article . . . without having obtained a permit."

■ Accordingly, we agree with defendants that those statutes require that defendants must have known that they were storing the material, and that the material was waste. *See United States v. Kelley Technical Coatings, Inc.*, 157 F.3d 432 (6th Cir. 1998) (RCRA statute mandates *mens rea*, "knowingly"; it applies to both storage and hazardous waste); *United States v. Laughlin*, 10 F.3d 961 (2d Cir.1993) (same); *United States v. Hoflin*, 880 F.2d 1033 (9th Cir.1989) (same).

Here, the elemental jury instruction given described this offense in pertinent part as follows:

(1) That the defendant . . .

(3) knowingly,

(4) stored hazardous waste,

(5) without having obtained a permit to do so, as required by law.

Another instruction provided that "[a] person acts 'knowingly' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." Yet another instruction defined hazardous waste, as pertinent here, as "any material . . . which has no commercial use or value or which is discarded . . . by the possessor thereof, either of which because its quantity, concentration, or physical or chemical characteristics may . . . pose a substantial present or potential hazard to human health or the environment."

These instructions tracked the applicable statutes and definitions contained therein and we conclude they were sufficient here. *See People v. Gallegos*, 950 P.2d 629 (Colo. App.1997) (an instruction in the language of the statute is generally sufficient).

In addition, the instructions informed the jury that the culpability element of knowingly applied both to the proscribed conduct, storing, and the concomitant circumstance, that the waste was hazardous. Moreover, the instructions specifically defined hazardous waste to mean materials that were potentially harmful to people or to the environment. Hence, we reject defendants' contention and conclude there was no error, let alone structural error, in the jury instructions. *See People v. Rodriguez*, 914 P.2d 230, 272 (Colo.1996) (" 'knowingly,' when offset from other elements, modifies all succeeding conduct elements"); *People v. Bossert*, 722 P.2d 998 (Colo.1986) (no error if "knowingly" element set out in instruction as first element and all others described under number two); *People v. Stephens*, 837 P.2d 231 (Colo.App.1992) (no error if "knowingly" element listed as number 3 and each

later element assigned separate number). And, defendants' tendered instructions merely duplicated the same information, albeit in different form.

In a related contention, defendants assert that the trial court failed to instruct the jury that the law specifically permits a company as small as Thoro to store hazardous waste for as long as 180 days without a permit. However, because the evidence was clear that the drums had been stored at Thoro for more than 180 days before the date specified in the indictment, and there was no controversy surrounding this, we reject this assertion. *See People v. Laurson,* 15 P.3d 791 (Colo.App.2000) (the trial court should not instruct on an abstract principle of law unrelated to the issues in controversy).

### III.

Concerning its conviction for criminal mischief, Thoro asserts that the trial court erred in failing to instruct the jury on the meaning of the phrase "single criminal episode" in accordance with its tendered instruction. Alternatively, Thoro contends that its conviction for criminal mischief must be vacated because the prosecution's theory—that it failed to clean up solvents that were spilled over the course of many years—does not, as a matter of law, constitute damage to the property of another in the course of a single criminal episode. Hence, it asserts that the trial court erred in failing to grant its motion to dismiss this charge. We disagree.

A person commits criminal mischief when he or she knowingly damages the real or personal property of one or more other persons in the course of a single criminal episode. If the amount of damage is $15,000 or more, it is a class 3 felony. Section 18–4–501(1), C.R.S.2000.

### A.

■ When a term, word, or phrase in a jury instruction is one with which reasonable persons of common intelligence would be familiar, and its meaning is not so technical or mysterious as to create confusion in jurors' minds as to its meaning, an instruction defining it is not required. *See People v. Dead-*

*mond,* 683 P.2d 763 (Colo.1984); *People v. Leonard,* 872 P.2d 1325 (Colo.App.1993).

Our research has not found any criminal mischief cases in which the existence of the "single criminal episode" element is discussed, much less analyzed. However, a similar phrase, "same criminal episode," has been the subject of many decisions, most often arising in the context of compulsory joinder claims. Indeed, some cases have used the phrases interchangeably. *See Priday v. People,* 742 P.2d 321 (Colo.1987); *People v. Joseph,* 920 P.2d 850 (Colo.App.1995).

The "same criminal episode" includes acts that are committed simultaneously or close in sequence, occur in the same place or closely related places, and form part of a schematic whole. *See Jeffrey v. District Court,* 626 P.2d 631 (Colo.1981). Acts arising from the same criminal episode include offenses arising from the same conduct of the defendant or offenses connected in such a manner that prosecution of the offenses involves substantially interrelated proof. *People v. Rogers,* 742 P.2d 912 (Colo.1987).

■ Based upon the textual analysis in these joinder cases and a review of the structure of the criminal mischief statute, we conclude that "single criminal episode" means essentially the same thing as "same criminal episode." In our view, that phrase is one with which reasonable persons of common intelligence would be familiar and is not so technical as to create confusion in jurors' minds as to its meaning.

Hence, the trial court was not required to define the phrase for the jury.

### B.

■ Thoro next asserts that it cannot be held liable for criminal mischief when the charge was based upon an omission—a failure to stop the process of contamination of adjacent soil. We disagree.

It is undisputed that Thoro was not prosecuted for affirmative acts under this theory. Instead, the prosecution charged that Thoro was liable for culpable omissions that occurred in the 1990's, that is, its knowing failure to remediate or clean up its own

property so as to stop the process by which the solvent-laden soils contaminated the property of down-gradient owners. The prosecution relied upon the statutory definition of "crime" contained in § 18–1–104, C.R.S.2000, which states that the terms "offense" and "crime" are synonymous and mean a violation of, or conduct defined by, any state statute for which a fine or imprisonment may be imposed. "Conduct" in turn, is defined as "an act or omission and its accompanying state of mind or, where relevant, a series of acts or omissions." Section 18–1–501(2), C.R.S.2000. "Omission" is defined as "a failure to perform an act as to which a duty of performance is imposed by law." Section 18–1–501(7), C.R.S.2000.

■ Contrary to Thoro's contention, we see no legal impediment to prosecution for criminal mischief arising from an omission, if the required elements of "knowingly damaging" property of another in the course of a single criminal episode are proven to arise from the failure to perform an act as to which a duty of performance is imposed by law. *See* § 18–1–606(1)(a), C.R.S.2000 (a corporation's commission of a crime may be based upon an omission to discharge a duty imposed by law).

Here, the indictment alleged that, in June 1996, Environmental Protection Agency employees contacted defendant Newman and informed him of the existence of the groundwater contamination emanating from the Thoro facility as a result of spillage of solvents. It further asserted that Newman was aware that Thoro's handling of the solvents was practically certain to contaminate the groundwater, and that he and Thoro had actual knowledge of the contamination and that the contaminated groundwater had flowed to properties belonging to other persons. It alleged that defendants had not made any effort to remove the solvents from the soil and thereby to stop the process of contamination, and that damage to an adjacent property in excess of $15,000 had occurred. At trial, evidence was presented to prove these allegations.

We conclude that the indictment adequately alleged, and the prosecution proved, sufficient failures to act when there was a duty to do so, and the requisite knowledge and damage to the property of another. Further, the omissions occurred in relatively close sequence (failure to act upon gaining knowledge of the contamination and adjacent property damage); in the same general place (Thoro's facility); and they formed part of a schematic whole (attempting to avoid responsibility for the pollution that had been caused). Hence, the prosecution's process theory and the evidence supporting it are within the statutory language defining criminal mischief.

■ To the extent Thoro asserts that the prosecution could cite no legal duty to "clean up," we also reject that contention. As of July 1, 1981, when the disposal site provisions of Colorado's Hazardous Waste Act became effective, see §25-15-102(1), C.R.S. 2000, Thoro was in active operation and allowing solvents to be discharged into the soil on its property. Therefore, it was a hazardous waste disposal site. *See* § 25–15–200.3, C.R.S.2000. As such, it was permitted to dispose of hazardous wastes on its own property if, *inter alia,* it was in compliance with applicable rules and regulations. *See* § 25–15–201(4), C.R.S.2000. Those regulations imposed many duties on Thoro, including the duty to clean up the hazardous wastes it allowed to leak onto its property. *See* Department of Public Health & Environment Regulation No. 265.51, 6 Code Colo. Reg. 1007–3 (requisite contingency plan must be carried out when hazardous wastes are released into soil or water).

The jury was told of this duty when the compliance coordinator for the Hazardous Waste Division of the Department of Public Health and Environment testified as to the nature of the regulatory scheme adopted pursuant to Colorado's Hazardous Waste Act.

To the extent that Thoro contends it was prosecuted for acts of spilling that had taken place decades before the indictment, we disagree. The indictment and responses to defendants' motion to dismiss make it clear that the criminal mischief count related to omissions occurring in the 1990's.

For the same reasons, we also conclude that the omission required for commission of an offense occurred concurrently with the applicable *mens rea*. *See Cooper v. People*, 973 P.2d 1234 (Colo.1999) (*citing* W. LaFave & A. Scott, Jr., *Substantive Criminal Law* § 3.11(a) (1986)). Therefore, we reject Thoro's assertions.

## IV.

Defendants next contend that the trial judge erred when he failed to recuse himself in response to their motion. Accordingly, they assert that their convictions cannot stand and a retrial is necessary. We disagree.

If a party believes that the judge assigned to the case is prejudiced with respect to the case, the parties, or counsel, the party may, within ten days of the assignment to that judge, file a motion for a change of judge. The motion may be filed after the ten-day period only if good cause is shown. Section 16–6–201, C.R.S.2000; Crim.P. 21(b).

When a motion for substitution of judge is made after the ten-day period, the test is whether the application was made as soon as possible after the occurrence or discovery of the facts that form the basis for the motion. *People v. Botham*, 629 P.2d 589 (Colo.1981).

A trial judge's decision regarding the legal sufficiency of a motion for substitution is a question of law subject to *de novo* review. *Wilkerson v. District Court*, 925 P.2d 1373 (Colo.1996).

Here, defendants alleged that the judge might be prejudiced against them because of an adversarial relationship between their attorney and the judge. According to the affidavits, defense counsel had represented a former client of the judge in a legal malpractice case against the judge and others. Defense counsel, however, had informed defendants of this relationship and its possible adverse effects on them before counsel entered his appearance in the case.

Since the motion was based on the trial court's asserted bias against defense counsel, the ten-day period began to run following defense counsel's entry of appearance. The motion was filed over five months later, and the only good cause allegation was that defendants did not realize the trial court was biased against their counsel until the trial court denied several of their motions to dismiss. However, defendants knew of the grounds for recusal when they hired defense counsel, and thus were obligated to make their motion when they hired their attorney and he entered his appearance, not five months later, as was done here.

Legal rulings in a case are, by themselves, insufficient to demonstrate a bias or prejudice against a party. *See People v. Boehmer*, 767 P.2d 787 (Colo.App.1988). Thus, the fact that the judge summarily ruled against defendants on two issues after they had hired counsel did not constitute good cause for defendants' failure to act upon facts of which they were already aware.

Defendants further claim they were relieved of their duty to file a timely motion because the judge had a duty to recuse on his own motion. We reject that claim. To hold otherwise would obviate the time limit completely and encourage litigants to shop for judges. Furthermore, the trial court here stated that it harbored no bias or prejudice toward the parties or their attorneys in this case. Unless prejudiced, the judge had a duty to sit on the case. *See Smith v. District Court*, 629 P.2d 1055 (Colo. 1981).

## V.

Defendants next assert that their sentences for storage of hazardous waste and criminal mischief should be vacated because the trial court failed to comply with applicable sentencing standards and abused its discretion. We agree in part.

Because sentencing requires familiarity with the circumstances of a case, a trial court's sentencing decision will not be disturbed absent a clear abuse of discretion. *People v. Fuller*, 791 P.2d 702 (Colo.1990); *see People v. Vigil*, 718 P.2d 496 (Colo.1986) (trial court is in best position to balance relevant considerations and fix sentence). If

the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, an appellate court must uphold the sentence. *People v. Gagnon*, 997 P.2d 1278 (Colo.App. 1999).

■ In exercising its sentencing discretion, the trial court must consider the nature and elements of the offense, the character and rehabilitative potential of the offender, any aggravating or mitigating circumstances, and the public interest in safety and deterrence. The court may not place undue emphasis on any one of these factors to the exclusion of the others. *People v. Eurioste*, 12 P.3d 847 (Colo.App.2000).

### A.

■ We agree that the trial court did not apply the correct sentencing provision to Newman's conviction for storage of hazardous waste.

The provisions of the Colorado Criminal Code, § 18–1–101, et seq., C.R.S.2000, govern the construction of and punishment for any offense defined in any statute, except as otherwise expressly provided by § 18–1–108, C.R.S.2000. Section 18–1–103, C.R.S.2000.

Section 18–1–108 specifically states that any felony defined by state statute without specification of its class shall be punishable as provided in the statute defining it. The statute defining the offense of knowing storage of hazardous waste without a permit, § 25–15–310(1)(b), does not specify a felony class. Accordingly, the general provisions of the Criminal Code do not apply to this crime. *See People v. Bagby*, 734 P.2d 1059 (Colo. 1987) (§§ 18–1–101 to 18–1–108 evidence an intent to delineate fully in the Liquor Code itself the types of punishment available for violations of its provisions).

According to § 25–15–310(3), a violation may be punished by a fine of not more than $50,000 for each day of violation, or by imprisonment not to exceed four years, or both.

Here, for Newman's conviction for storage of hazardous waste without a permit, the court sentenced him to imprisonment "in the aggravated range" for six years, apparently looking to the aggravated sentence provision of § 18–1–105(6), C.R.S.2000. However, that provision is inapplicable to the unclassified felony of storage of hazardous waste without a permit. Rather, § 25–15–310(3) prescribes the only penalties permissible. *See People v. Bagby, supra.* Therefore, the maximum available penalty for Newman under the law (excluding the parole period imposed under § 18–1–108) was four years imprisonment. Accordingly, his sentence for improper storage cannot stand.

### B.

■ For the hazardous waste storage violation, the court fined Thoro $100,000. Since Thoro could have been sentenced up to $50,000 for each day that it illegally stored hazardous waste without a permit, the $100,000 fine did not violate the sentencing scheme.

### C.

■ Concerning Thoro's criminal mischief conviction, that crime is a classified felony and thus is subject to the provisions of § 18–1–105, C.R.S.2000. Felony criminal mischief carries a presumptive range sentence of four to twelve years of imprisonment and a fine of up to $750,000. Accordingly, Thoro's sentence of ten years probation and a fine of $750,000 did not violate the sentencing scheme.

### D.

We reject defendants' contention that the trial court abused its discretion in sentencing them. The court made extensive findings and considered factors set forth in § 25–15–310(5), factors applicable to probation, and the guidelines of *ABA Standards for Criminal Justice Sentencing*, Standard 18–6.3 (3d ed.1994).

The court found that the hazardous waste violations are serious offenses; the offenses here were committed daily over the course of many years; the violations were reckless and caused serious impact on the public health and environment, necessitating the installation of an alternate source of drinking water for the adjacent properties and making the

property immediately abutting the Thoro facility totally unmarketable; the defendants' recalcitrance had been great and ongoing; and defendants had not submitted reports required under environmental laws. The court heard testimony that it could take ten to thirty years and cost six to sixteen million dollars to remediate the contaminated areas. It found no mitigating circumstances. These findings are supported by the record. Accordingly, we decline to disturb the sentences.

We decline to address Newman's claim that his sentence is excessive in comparison with hazardous waste crime sentences levied in federal court. He must be resentenced, and therefore our review of this claim would be premature.

That part of the judgment convicting defendants of improper disposal of hazardous waste is reversed, and the sentences predicated thereon are vacated. The remaining convictions are affirmed. The sentences imposed on the remaining convictions are affirmed, except for Newman's sentence of six years imprisonment for improper storage of hazardous waste, which is vacated. The cause is remanded to the trial court; on remand, the court is directed to dismiss count two of the indictment and to conduct further proceedings consistent with the views set forth in this opinion.

HUME, C.J., and JONES, J., concur.