Affirmed in Part; Reversed and Acquitted in Part; and Opinion filed
October 12, 2004









Affirmed in Part; Reversed and
Acquitted in Part; and Opinion filed October 12, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01294-CR

NO. 14-02-01295-CR

NO. 14-02-01296-CR

NO. 14-02-01297-CR

____________

 

MARK ANTHONY SLOTT, THURMOND W. GENTRY, AND 

CAPITOL ELECTROPLATING, INC., Appellants

 

V.

 

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause Nos. 882,762; 882,757; 882,770; &
882,771



 



 

O P I N I
O N

In this appeal, we examine whether an offense
under Chapter 7 of the Texas Water Code occurred within the limitations period
and whether the State presented sufficient evidence to support appellants=
convictions pursuant to that Chapter.  We
also examine whether the jury was correctly charged regarding the State=s burden
of proof.  








Appellants Mark Anthony Slott (ASlott@),
Thurmond W. Gentry, (AGentry@) and
Capitol Electroplating, Inc. (ACapitol@) entered
pleas of not guilty to two offenses: (1) intentionally disposing of hazardous
waste, alleged to have occurred on August 10, 1998, and (2) intentionally
disposing and/or storing hazardous wastes, alleged to have occurred on November
19, 1998.  A jury convicted Capitol of
disposing of hazardous waste on August 10, 1998, and convicted Slott, Gentry,
and Capitol of disposing and/or storing hazardous wastes on November 19,
1998.  Because the jury could not reach a
verdict on the August indictments against Slott and Gentry, the trial court
granted a mistrial on those indictments. 

The trial court assessed Slott=s
punishment at three years=
confinement, probated for three years, and Gentry=s
punishment at five years=
confinement, probated for five years. 
The court fined Capitol $50,000 for each offense.  Regarding the August 10, 1998 offense,
Capitol argues the evidence is legally and factually insufficient to support
its conviction, and the trial court erred in refusing to instruct the jury on
the statute of limitations.  Regarding
the November 19, 1998 offense, appellants contend (1) the evidence is legally
and factually insufficient to support the convictions against them for the
offense of disposing and/or storing hazardous wastes, and (2) the trial court
erred in instructing the jury that the State did not have to prove appellants
knew the material disposed of and/or stored was hazardous.  We reverse and render judgment of acquittal
for the August 10, 1998 disposal conviction against Capitol because the state
failed to prove that the alleged disposal was within the limitations
period.  We affirm the judgments in the
remaining cases.

I.  Factual and
Procedural Background








Capitol is a corporation in the business of
chrome plating oil field equipment, and its sole shareholder is Thurmond
Gentry.  Mark Slott manages Capitol=s waste
disposal.  In the process of
electroplating, sand is used to clean certain products.  During that cleaning process, chrome is often
spilled and must be disposed of in a manner that avoids contamination of the
environment.  In June 1998, Robert
Broussard, who had been hired by Gentry to haul some sand, transported and
disposed of several drums of sand for Capitol at the Tidwell Dirt Yard.  Gentry paid Broussard, and Slott supervised
the loading of the drums into Broussard=s
truck.  

On August 10, 1998, Joe Vasquez,[1]
an Environmental Quality Specialist for the City of Houston, drove by the
Tidwell Dirt Yard on his way to another job site.  Vasquez testified he was familiar with
electroplating waste and that a particular pile of sand at the dirt yard
appeared to be a chrome sludge mixture. 
He took a sample of the sand, tested it, and discovered it contained 456
milligrams per liter of chromium, exceeding the level defined by the EPA as
hazardous waste.[2]  Sergeant Michael Walsh, an investigator with
the Houston Police Department Environmental Investigations Unit, determined
that the contaminated sand had originated at Capitol.  On November 19, 1998, Walsh executed a search
warrant at Capitol=s
premises, taking several samples from the plant.  Three of the samples tested at toxic levels
for chromium.  One sample came from a
drum of floor-dry absorbent material, one from a drum of stripping fluid, and
one from underneath a dumpster.  

After a jury trial, appellants were convicted
as noted and this appeal ensued.  

II.  Analysis

A.        August 10, 1998 Disposal








In its first and second issues, Capitol
contends the evidence is legally and factually insufficient to support a
conviction for intentionally or knowingly disposing of hazardous waste on
August 10, 1998.  In its third issue
concerning the August offense, Capitol contends the trial court erred in
refusing a jury instruction on the statute of limitations.  Because Capitol=s third
issue is dispositive regarding the August offense, we address that issue first.


In June 1998, Broussard disposed of
contaminated sand from Capitol at the Tidwell Dirt Yard.  On August 10, 1998, Vasquez discovered the
sand and determined that it contained hazardous waste.  On July 20, 2001, Capitol was indicted for
the unlawful disposal of the sand.[3]  Capitol contends that because the disposal of
the sand occurred in June 1998, the indictment on July 20, 2001 was not within
the three-year limitations period.[4]  See Tex.
Code Crim. Proc. Ann. ' 12.01(6)
(Vernon Supp. 2004).  We agree.

The indictment charged that Capitol disposed
of or caused to be disposed of hazardous waste on or about August 10,
1998.  The Aon or
about@ language
in an indictment permits the State to prove a date other than the date alleged,
as long as the date proved is before presentment of the indictment and within
the applicable statute of limitations.  L.B.
Foster Co. v. State, 106 S.W.3d 194, 200 (Tex. App.CHouston
[1st Dist.] 2003, pet. ref=d)
(citing Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App.
1997)).  Because the indictment was
presented on July 20, 2001, the State was required to show that Capitol
committed the offense of knowingly disposing of a hazardous waste on or after
July 20, 1998, but before July 20, 2001.[5]









The evidence is undisputed that the
contaminated sand was delivered to the Tidwell Dirt Yard in June 1998.  Thus, the disposal of the hazardous waste
occurred at a time outside the limitations period.  Nevertheless, the State contends that
hazardous chromium from the sand continued to leak into the soil and, until the
waste was remediated, Capitol continued to dispose of the waste by permitting
it to passively migrate into the soil. 
The State=s
argument, however, was expressly rejected by our sister court in L.B. Foster,
106 S.W.3d at 207.  In that case, the
First Court of Appeals held:

We conclude that, for
purposes of criminal prosecutions under Water Code subsection 7.162(a)(2), the
term Adisposal@ does not include the
passive disposal of hazardous wastes.  In
other words, a Adisposal@ of hazardous waste under
section 7.162 requires more than the passive migration of waste through the
soil unaided by affirmative human conduct. 
Some form of affirmative human conduct must accompany a disposal for it
to rise to the level of criminal culpability.

Id.

The State asks this court to conduct a
different analysis than used in L. B. Foster and to find that disposing
of hazardous waste becomes a continuing offense when the waste is permitted to
passively migrate into the soil.  The
State argues the First Court of Appeals failed to consider several federal
cases interpreting Adisposal@ under
the Resource Conservation and Recovery Act (ARCRA@).  42 U.S.C. '' 6901B6992k
(2003).  The definition of Adisposal@ found in
the RCRA is almost identical to the definition of disposal found in the Water
Code.  








The cases cited by the State have primarily
arisen in one of two contexts.  The first
involves a citizen=s suit
under section 7002 of RCRA.  42 U.S.C. ' 6972
(2003).  That section authorizes any
person to bring a civil action against Aany
person@ alleged
to be in violation of an RCRA permit, regulation, or standard.  Id. '
6972(a).  Several courts, in considering
such cases, have concluded that passive migration of previously dumped waste
constitutes an ongoing violation of the statute.  See City of Toledo v. Beazer Materials
& Servs., Inc., 833 F. Supp. 646, 656 (N.D. Ohio 1993) (holding that
the prior disposal of waste is an ongoing violation until the proper disposal
procedures are put into effect or the hazardous waste is cleaned up); Gache
v. Town of Harrison, N.Y., 813 F. Supp. 1037, 1042 (S.D.N.Y. 1993) (same); Acme
Printing Ink Co. v. Menard, Inc., 812 F. Supp. 1498, 1512 (E.D. Wis. 1992)
(stating leaking of hazardous substances may constitute a continuous or
intermittent violation).

The second context involves remediation
actions brought by the EPA under RCRA section 7003.  That section permits the EPA to seek
injunctive relief restraining further violation of the RCRA where there is an Aimminent
and substantial endangerment@ to
health or the environment.  42 U.S.C. ' 6973(a)
(2003).  Several courts have determined
that passive migration at an inactive disposal site constitutes an imminent and
substantial endangerment under the RCRA. 
See United States v. Price, 523 F. Supp. 1055, 1071 (D.N.J.
1981), aff=d, 688
F.2d 204, 214 (3rd Cir. 1982) (holding that section 7003 authorizes relief
restraining further leaking of waste from a landfill, and noting that section
7003 authorizes a general cleanup of even dormant waste sites if necessary to
cure a present threat to public health or the environment); United States v.
Conservation Chem. Co., 619 F. Supp. 162, 200 (D. Mo. 1985) (disposal
occurs when wastes migrate from their initial location); but see United
States v. Wade, 546 F. Supp. 785, 790 (E.D. Pa. 1982) (noting in dicta that
leaking of previously dumped waste does not constitute disposal).








Also, in another case, not brought under
section 7002 or 7003, the issue was whether the EPA could, under section 3008
of RCRA, enjoin a defendant to enforce state regulations.  See United States v. Power Eng=g Co., 10 F.
Supp. 2d 1145, 1146 (D. Co. 1998); see also 42 U.S.C. ' 6928
(2003).  Specifically, the EPA sought
compliance with state regulations requiring financial assurances from owners and operators of hazardous waste facilities to
document they had sufficient resources to close their facilities and pay
potential third-party claims.  Power
Eng=g, 10 F.
Supp. 2d at 1146.  Defendants argued that
since they were not currently disposing of waste, they were operating in
compliance with state regulations and exempt from financial assurance
requirements.  Id. at 1159.  The court disagreed.  It held that the use of the word Aleaking@ in the
definition of disposal indicated that the leaking of hazardous waste into the
groundwater constitutes continuing disposal of hazardous waste.  Id. at 1159B60.  In so holding, the court was particularly
concerned that allowing the defendant to be exempt from the financial assurance
requirements would encourage others to evade or ignore the permit requirements
of RCRA.  Id. at 1162.

These cases are distinguishable because they
involve the civil liability of the polluters. None of the RCRA cases cited by
the State involve the application of a statute of limitations on potential
criminal prosecution.  Criminal law must
be sufficiently clear such that a citizen will know what the law forbids.  Long v. State, 931 S.W.2d 285, 287
(Tex. Crim. App. 1996). The purpose of a statute of limitations in the criminal
context is to protect the accused from having to defend against stale criminal
charges and to prevent punishment for acts committed in the remote past.  See Ibarra v. State, 11 S.W.3d 189,
193 (Tex. Crim. App. 1999).  

Were we to reject the First Court of Appeals= decision
in L.B. Foster and follow the State=s
reasoning, a potential polluter could be subject to criminal prosecution years
after his act of disposal ended.  We
conclude that for purposes of criminal prosecutions under Water Code subsection
7.162(a)(2), the term Adisposal@ does not
include the passive disposal of hazardous wastes.  Instead, some form of affirmative human
conduct must accompany a disposal for it to rise to the level of criminal
culpability.[6]  See, e.g., L.B. Foster, 106 S.W.3d at
207.








Here, because the act of disposal occurred in
June 1998, the indictment on July 20, 2001 was not within the limitations
period.  Therefore, we sustain Capitol=s first
issue.[7]  

B.        November 19, 1998 Storage and/or
Disposal

1.         Sufficiency of the Evidence

In Slott=s and
Gentry=s first
and second issues, and in Capitol=s fifth
and sixth issues, appellants contend the evidence is legally and factually
insufficient to support their convictions for storage and/or disposal of
hazardous waste on November 19, 1998.

a.         Standard of Review

When
reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  King v. State, 29 S.W.3d
556, 562 (Tex. Crim. App. 2000).  In
conducting this analysis, we may not reweigh the evidence and substitute our
judgment for that of the jury.  Id.  The standard is the same for both direct and
circumstantial evidence cases.  Kutzner
v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).








In
reviewing factual sufficiency of the evidence, we view all the evidence in a
neutral light, both for and against the finding.  Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  The evidence will not be deemed factually
insufficient unless (1) it is too weak, when considered by itself, to support
the finding of guilt beyond a reasonable doubt, or (2) contrary evidence, if
present, is strong enough that the beyond-a-reasonable-doubt standard could not
have been met.  Zuniga v. State, __ S.W.3d __, __, No. 539-02, 2004 WL 840786, at *7 (Tex.
Crim. App. Apr. 21, 2004); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  Even if we disagree with the verdict, our
factual sufficiency review must be appropriately deferential to avoid
substituting our judgment for that of the fact finder.  Clewis, 922
S.W.2d at 133.  Our evaluation should not
intrude upon the fact-finder=s role as the sole judge of the weight and credibility given to
any witness=s testimony.  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997).  When
evaluating a factual sufficiency challenge, we must address the evidence
appellant claims is the most important in allegedly undermining the jury=s verdict. Sims v.
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

b.         Applicable Law

Appellants were convicted of unlawfully storing and/or disposing
of hazardous waste on November 19, 1998. 
The offense is defined in section 7.162(a)(2) of the Water Code as
follows:

(a) A person
commits an offense if the person, acting intentionally or knowingly with
respect to the person=s conduct:

* * * * *

(2) stores . .
. or disposes of, or causes to be stored . . . or disposed of, any hazardous
waste without all permits required by the appropriate regulatory agency[.]

 

Tex. Water Code Ann. ' 7.162(a)(2) (Vernon 2000). 
The indictment charged that appellants A[o]n or about November 19,
1998, did then and there unlawfully, intentionally and knowingly store
and/or dispose of and cause to be stored and/or disposed of a hazardous waste,
namely a solid waste exhibiting the toxicity characteristic for chromium,
without all permits required by the appropriate regulatory agency . . . .@ 

The jury was instructed that storage is defined as Athe temporary holding
of solid waste, after which the solid waste is processed, disposed of, or
stored elsewhere.@  See Tex. Health & Safety Code Ann. ' 361.003(38) (Vernon
2001).  Disposal was defined as:

[T]he
discharging, depositing, injecting, dumping, spilling, leaking, or placing of
solid waste or hazardous waste, whether containerized or uncontainerized, into
or on land or water so that the solid waste or hazardous waste or any
constituent thereof may be emitted into the air, discharged into surface water
or groundwater, or introduced into the environment in any other manner.








Id. ' 361.003(7) ; See L.B. Foster Co. v. State, 106 S.W.3d 194,
204 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (finding Adisposal@ as defined in Health and Safety Code applied to term in Water
Code)).

c.         Evidence

At trial, the evidence showed that, before the events in this
appeal, Capitol=s employees were instructed on the proper methods of storing and
disposing of hazardous waste.  In 1997,
as the result of a Texas Natural Resource Conservation Commission (ATNRCC@) investigation,
Capitol hired an environmental consultant, Arthur Malone.  Malone delineated separate waste streams for
the facility and explained to Gentry and Bruce Glassco, the plant manager at
the time,[8]
that each waste stream had to be tracked separately and was not to be
commingled.  He also explained that the
drums of waste should be labeled with an accumulation start date and a notation
that the drum contained hazardous waste. 
He further informed them that a manifest, which tracks where and how
waste has been disposed, is necessary when waste is stored or transported from
the facility.  Jill Burris, an
investigator with the Texas Commission on Environmental Quality (formerly
TNRCC), testified that disposing of hazardous waste without recording the
disposal on a manifest is illegal under Water Code subsection 7.162(a)(2).  








As a large-quantity generator of hazardous waste, Capitol was
permitted to store hazardous waste on site for up to ninety days, after which
it was required to properly dispose of the waste or obtain a permit from the
State of Texas.  On November 19, 1998,
two containers were found to contain hazardous levels of chromium.  Neither container was labeled with an accumulation
start date, therefore it was impossible to determine how long the waste had
been stored.  Both drums contained waste
that Malone had identified as hazardous waste in 1997.  Appellants argue the evidence is legally and
factually insufficient to prove that hazardous waste had been stored at Capitol
longer than ninety days.  According to
appellants, the accumulation start date did not begin until the drums were
full.  Contrarily, Jill Burris testified
that the accumulation date required on the outside of each drum should be the
date the drum began to accumulate waste. 
However, whether the accumulation start date is calculated from the date
of the first deposit or when the drum is full is not pertinent to our analysis,
because appellants failed to note any accumulation dates on the drums.  

Capitol=s 1998 Annual Waste Summary does not reflect that any solid waste
was disposed of from April 28, 1998 until November 20, 1998, indicating that
Capitol stored solid waste on site for as long as seven months.  Gentry testified that he mixed wastes
containing chrome and that he did not place accumulation start date labels on
any hazardous waste, or properly label the drums.  Further, toxic levels of chromium were found
in the soil underneath a dumpster at Capitol, indicating chromium had been
disposed of in or near the dumpster.

In response to the State=s case-in-chief, Appellants presented the testimony of Bruce
Simpson, owner of a hazardous waste management company, and Gentry.  Simpson testified regarding the clean-up of
Capitol after the November 19, 1998 search warrant had been executed, and
stated that he transported approximately 20,000 pounds of hazardous waste from
Capitol in November 1998.  Gentry
testified that on April 28, 1998, eleven drums of solid waste were transported
from Capitol.

Having reviewed this evidence in the light most favorable to the
verdict, we find legally sufficient evidence to support the convictions for
illegally storing and/or disposing of hazardous waste.  Further, reviewing all the evidence
neutrally, we find the evidence is not too weak to support the jury=s finding of guilt
beyond a reasonable doubt or that contrary proof was so strong that the
beyond-a-reasonable-doubt standard was not met. 
Slott=s and Gentry=s first and second issues and Capitol=s fifth and sixth
issues are overruled.








2.         Jury
Instruction 

In Slott=s and Gentry=s third issues and in Capitol=s fourth issue, they contend the trial court erred in giving the
following jury instruction:

You are
further instructed that the prosecution is not required to prove that the
defendant knew that the material stored, disposed, caused to be stored or
caused to be disposed was a hazardous waste as defined, but rather the
prosecution must prove that the defendant knew that the material was waste and
had the potential to be harmful to others or the environment.

 

Appellants objected to the instruction and the trial court overruled
their objection.  We review the trial
court=s submission of jury
instructions under an abuse of discretion standard.  Westbrook v. State, 29 S.W.3d 103, 122
(Tex. Crim. App. 2000).  

On appeal, appellants argue this instruction effectively lowers
the burden of proof for the state because it removes the culpable mental state
regarding the element of Ahazardous waste,@ thereby creating a strict liability statute for the disposal of
any waste.  We disagree.          The
State was required to prove appellants intentionally or knowingly committed the
offense of storage and/or disposal of hazardous waste.  Storage or disposal of hazardous waste is a Anature of conduct@ offense.  See Tex.
Water Code Ann. ' 7.162(a) (Vernon
2000).  The actor must act intentionally
or knowingly with respect to his conduct. 
Id.  A person acts
knowingly, or with knowledge, with respect to the nature of his conduct or to
circumstances surrounding his conduct when he is aware of the nature of his
conduct or that the circumstances exist. 
Tex. Pen. Code Ann. ' 6.03(b) (Vernon 2003).  








The knowledge requisite to a knowing violation of a statute is
factual knowledge as opposed to knowledge of the law.  See Bryan v. United States, 524 U.S.
184, 192 (1998); United States v. Baytank (Houston), Inc., 934 F.2d 599,
613 (5th Cir. 1991).  Consequently, Aknowingly@ means only that the
defendant knows factually what he is doing. 
Baytank, 934 F.2d at 613. 
It is not necessary to establish the defendant knows there is a
regulation stating that what is stored or disposed of is classified as
hazardous waste.  Id.  In other words, the State had to prove
appellants knew they were storing or disposing of waste which was hazardous,
that is, had the potential to harm others or the environment; however, the
State did not have to prove appellants knew the waste was hazardous as defined
in the regulations.[9]  See Tex.
Water Code Ann. ' 7.162(1); see, e.g., United States v. Kelly, 167 F.3d
1176, 1180B81 (7th Cir. 1999) (finding instruction regarding knowledge did
not shift burden when it indicated that government did not have to prove
defendant knew substance qualified as hazardous waste); United States v.
Kelley Technical Coatings, Inc., 157 F.3d 432, 438 (6th Cir. 1998)
(concluding instruction was proper because it required government to prove
defendant=s knowledge of the storage or disposal, his knowledge the material
was waste and it was potentially harmful to others); United States v.
Laughlin, 10 F.3d 961, 965B66 (2d Cir. 1993) (finding government need only prove, regarding mens
rea, that a defendant was aware of his act of disposing and that the
substance was hazardous); People v. Thoro Prods. Co., 45 P.3d 737, 744
(Colo. App. Ct. 2001) (finding defendant must have known of the storing of
material that was hazardous).

Examining the charge as a whole, the jury was informed that a
person commits the offense if, acting intentionally or knowingly with respect
to his conduct, he Astores or disposes of, or cause to be stored or disposed of, any
hazardous waste without all [necessary] permits.@  The jury was also charged
as follows:








Now, if you
find from the evidence beyond a reasonable doubt that on or about the 19th day
of November, 1998, in Harris County, Texas, the defendant, [. . .] did
then and there unlawfully, intentionally or knowingly store or cause to be
stored a hazardous waste, namely, a solid waste exhibiting the toxicity
characteristic of chromium, without all permits required by the appropriate
regulatory agency, namely, the Texas Natural Resource Conservation Commission; or
if you find from the evidence beyond a reasonable doubt that on or about the
19th day of November, 1998, in Harris County, Texas, the defendant, . . . did
then and there unlawfully, intentionally or knowingly dispose of or cause to be
disposed of a hazardous waste, namely,  a
solid waste exhibiting the toxicity characteristic for chromium, without all
permits required by the appropriate regulatory agency, namely, the Texas
natural Resource Conversation Commission, then you will find the defendant
guilty as charged in the indictment.

 

In sum, the trial court=s instruction properly informed the jury that the State was
required to prove appellants knew they were disposing of waste and knew the
material had the potential to be harmful to others or the environment.  The trial court=s instruction did not negate a culpable mental state because there
is no requirement that appellants know the waste was categorized by the State
as a hazardous waste.  See Kelley
Technical Coatings, 157 F.3d at 440. 
The trial court did not abuse its discretion by submitting the
instruction.  Slott=s and Gentry=s third issues are
overruled.  Capitol=s fourth issue is
overruled.

III.  Conclusion

For the foregoing reasons, the judgment in cause number 882770 is
reversed and judgment of acquittal is rendered. 
The judgments in cause numbers 882771, 882762, and 882757 are affirmed.

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed October 12, 2004.

Panel consists of Chief Justice Hedges and Justices Fowler and
Guzman.

Publish C Tex. R. App. P.
47.2(b).

 

 











[1]  In its brief,
the State asserts the record incorrectly referred to Joe Bosques as Joe
Vasquez.  Because the record has not been
corrected, for purposes of this opinion, we will refer to the name used in the
record.





[2]  Five milligrams per liter is the
limit of toxicity for chromium set by the Texas Natural Resource Conservation
Commission (ATNRCC@) and the United States
Environmental Protection Agency (AEPA@).





[3]  A corporation may be criminally
liable if (1) the conduct constituting the offense is performed by an agent
acting on behalf of the corporation and within the scope of his office or
employment, and (2) the commission of the offense is authorized, requested,
commanded, performed, or recklessly tolerated by a high managerial agent acting
on behalf of the corporation and within the scope of his office of
employment.  Tex. Pen. Code Ann. ' 7.22 (Vernon 2004).





[4]  A violation of
the Water Code section 7.162(a)(2) is a felony with a three-year statute of
limitations.  Tex. Water Code Ann. '
7.162(a)(2) (Vernon 2004); Tex. Code
Crim. Proc. Ann. art. 12.01(6) (Vernon 2004).  





[5]  If a defendant requests a jury
instruction on its limitations defense and there is some evidence that
prosecution is time-barred, the State must then prove beyond a reasonable doubt
that prosecution is not barred by limitations. 
Proctor v. State, 967 S.W.2d 840, 844 (Tex. Crim. App.
1998).  Capitol requested a limitations
instruction, which the trial court refused. 





[6]  The State
cites to one unreported criminal Ohio decision in support of its contention
that passive migration should be included in the definition of disposal.  See State v. Brothers, No.
2000-T-0085, 2001 WL 1602692, at *1 (Ohio App. 11 Dist. Dec. 14, 2001).  In that case, Brothers was convicted of
illegal disposal of hazardous waste after a search warrant revealed several
hundred leaking drums of hazardous waste. 
The Ohio court held that the continued leaking of the drums constituted
a continuing offense of disposal of hazardous waste and found the indictment
was brought during the appropriate limitations period.  The disposal of the sand in this case was a discrete
event.  The court in L.B. Foster
specifically noted that intentionally or knowingly allowing a hazardous waste
to leak or otherwise escape from some form of containment could be considered a
disposal for which a defendant could be prosecuted.  L.B. Foster, 106 S.W.3d at 205
n.11.    





[7]  Because of our disposition, we need
not reach Capitol=s second and third issues.





[8]  In 1998, Bruce Glassco left Capitol
and Slott was given the duty of ensuring that Capitol=s hazardous waste was properly
stored and disposed of. 





[9]  Appellants
contend that L.B. Foster requires the State prove two separate, culpable
mental states.  The first, that they
knowingly stored or disposed of the waste, and second, that it was hazardous
waste.  We do not disagree.  However, as shown, the State is not required
to prove appellants knew the waste was Ahazardous@ as defined in the regulations.